**UNITED STATES of America, Appellee,**

v.

**Charles RUSSO, Appellant.**

**No. 117, Docket No. 77–1196.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 30, 1977.
Decided Oct. 7, 1977.

John Holland Foote, Atty., Dept. of Justice, Washington, D.C. (Richard J. Arcara, U. S. Atty., for the Western District of New York, Buffalo, N. Y., William G. Otis, Atty., Dept. of Justice, Washington, D.C., and L. George Parry, Sp. Atty., Buffalo Strike Force, Buffalo, N. Y., on the brief), for appellee.

Phylis Skloot Bamberger, The Legal Aid Society, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, on the brief), for appellant.

Before LUMBARD, OAKES and MESKILL, Circuit Judges.

LUMBARD, Circuit Judge:

Charles Russo appeals from a jury verdict in the Western District of New York convicting him under 18 U.S.C. § 371 (1970) of conspiring to violate 18 U.S.C. § 1955 (1970), which makes it a federal crime to conduct, finance, manage, supervise, direct, or own a gambling business which violates state law, involves five or more people, and either remains in substantially continuous operation for more than thirty days or has a gross revenue of $2,000 in any single day. He claims that neither the duration of the gambling operation in which he was involved nor its gross revenue were properly before the jury. Specifically, he charges that, although a duration of greater than thirty days was properly charged in the indictment, the lack of evidence showing such a duration required that the question be removed from the jury's consideration. On the other hand, the appellant claims that irrespective of the evidence adduced at trial the jury could not consider the question of gross revenues because duration alone was charged in the indictment. We find that there was ample evidence that Russo and others named in the indictment conspired to conduct a gambling business contrary to New York law involving five or more persons and which was planned both to remain in operation for more than thirty days and to produce revenue of $2,000 in any single day. Accordingly, we affirm the conviction.

The evidence at trial showed that appellant Russo, together with Joseph Zito and Paul Comfort, began operating a professional dice game on Jay Street in Rochester, New York in January of 1973. In addition to these three, the game employed Joe Salerno, Frank Ferrara, Joe Comfort, and a man named Walter. Business was bad, however, and the game was forced to close in March of 1973.

About this time Zito became a government informer in exchange for sentencing concessions given him in connection with a prior conviction in December of 1972. In late March of 1973 Zito introduced an un-

4

dercover FBI agent named Brana to the appellant as a new source of funds for the game. In exchange for $5,000 from Brana to finance the operation, the appellant was to provide the location and personnel and give Brana 70% of the net profits. The appellant represented that he already had the location and workers available for their use.

In early April, Zito, Brana, and the appellant met to consider arrangements for the gambling operations. At these discussions the appellant altered the terms of the agreement to include another backer (who was to contribute another $5,000) and to change the location for the game from the original Jay Street building to a new place on Webster Street. The dice game operated on Webster Street according to the plan from April 9 through April 12 of 1973, at which time it closed because of a dispute among the parties. During that time, it had a staff which included all of the former workers at the Jay Street operation and each night over $30,000 was wagered. Shortly after the game's termination, appellant Russo, Paul Comfort and two others[1] were indicted in two counts for conspiracy to violate and actual violation of 18 U.S.C. § 1955.

Following a trial before Judge Curtin and a jury in which he presented no defense and did not take the stand, Russo was acquitted of the substantive offense but convicted of conspiring to violate § 1955. He was sen-

tenced to eighteen months in prison. Russo's co-defendants at trial, Salvatore Gingello and Salvatore Russotti, were acquitted on both counts.

■ Since Russo was convicted of conspiracy, his complaint that the trial court should have ruled as a matter of law that the government had failed to prove that the game was in substantially continuous operation for more than thirty days is entirely without merit. The jury was only required to find that Russo conspired to conduct the illegal gambling operation for more than thirty days.[2] Further, there was evidence that in fact the dice game was conducted from late January to early March and was resumed at a different location from April 9 to April 12. The trial court, therefore, was clearly correct in declining to rule as Russo requested.

■ Russo's complaint that it was reversible error to allow the jury to consider testimony regarding the gross revenues of the gambling operation is equally without merit. Under the terms of the conspiracy statute and § 1955, the government had to show that the game was designed either to operate for more than thirty days or to produce receipts of $2,000 in a single day. Consequently, evidence concerning the gross revenues of the Webster Street gambling operation was highly relevant to both counts of the indictment. From this evidence, the jury could reasonably conclude

1. Along with appellant Russo, Salvatore Gingello (the other financial backer of the Webster Street game), Salvatore Russotti (an associate of Gingello), and Paul Comfort were indicted. Comfort, however, was severed prior to trial and has yet to be tried.

2. Appellant cites United States v. San Juan, 545 F.2d 314 (2d Cir. 1976) in urging that the district court should have excluded evidence of what the conspiracy contemplated because the government failed to rely explicitly on this theory at trial. San Juan is not in point, however. In that case the government repeatedly made clear its theory of the case and specifically rejected the alternative theory suggested for the first time in the court's charge to the jury. As a result, we ruled that the defendant's conviction was unfair in that she was led by the

unequivocal representations of the government to forego certain defenses she might otherwise have asserted. In this case, on the other hand, the appellant's claim of prejudice is much less compelling. While the government did not present a model of clarity in its prosecution of the case, it never explicitly eschewed consideration of what the conspiracy contemplated. Accordingly, since the details of the plan were necessarily the essence of the conspiracy, the defense could not have been dissuaded from introducing evidence regarding the anticipated scope of the conspiracy. We conclude, therefore, that here the government's presentation did not give rise to any prejudicial deception of the defense such as that which we held warranted reversal in San Juan.

that the game received revenues of more than $30,000 in each of its days of operation.

Nor is there any substance to Russo's claim that he was misled. The obvious purpose of any gambling enterprise is to attract gross receipts and so it is not surprising that the government would attempt to show that Russo's conspiracy contemplated producing substantial revenues. In its opening statement the government promised that it would produce testimony that the game produced revenues of more than $30,000 per night.[3] No objection was made to this evidence, either when it was promised at the beginning of trial or later when it was actually produced. Thus, the belated claim that the defendant was misled is frivolous.

Lastly, we reject Russo's claim that the wording of the indictment limited the prosecution to duration alone in proving the jurisdictional elements of § 1955. The reference to time in the conspiracy count related to the period of existence of the conspiracy and not to how long the conspirators contemplated the game would continue.[4] In any event, the evidence of gross receipts was so relevant to the prosecution under § 1955 that it could not properly have been excluded even on the narrowest interpretation of the indictment.

Conviction affirmed.

3. Specifically, in its opening statement the government said that,

. . . to constitute a violation of the Federal Law, we must establish that at least $2,000 was wagered in any given day of the operation of this gambling business and in that regard, Special Agent Brana will testify that he observed bets being placed, that he would conservatively estimate that approximately $35,000 [sic] per night in this game. Subsequently, the government attorney elicited from Agent Brana his estimate of the amount wagered on each night of the Webster Street operation without objection from defense counsel.

4. Count One of the indictment reads:

The Grand Jury Charges:

THAT continuously between January 20, 1973 and April 20, 1973, in the Western District of New York, SALVATORE RUSSOTTI, a/k/a "Red", SALVATORE GINGELLO a/k/a "Sammy G", CHARLES RUSSO and PAUL COMFORT, defendants herein, and JOSEPH ZITO, JOSEPH SALERNO and SOL SHARFSTEIN, named herein as co-conspirators, but not indicted as defendants, and others, did unlawfully and knowingly conspire, combine and agree together and with each other to conduct, finance, manage, supervise, direct and own an illegal gambling business, involving a dice game which violated the provisions of Article 225 of the Penal Law of the State of New York, in violation of Section 1955 of Title 18 of the United States Code.

. . .

The indictment then proceeds to allege specific acts done in furtherance of the conspiracy.