UNITED STATES of America, Appellee,

v.

William B. JAMES, Defendant–Appellant.

No. 717, Docket 92–1390.

United States Court of Appeals, Second Circuit.

Argued Feb. 5, 1993.

Decided June 29, 1993.

Marjorie M. Smith, Legal Aid Society, Federal Defender Services Appeals Unit, New York City, for appellant.

Michael S. Sommer, Asst. U.S. Atty., S.D.N.Y., New York City (Roger S. Hayes, U.S. Atty. S.D.N.Y., John W. Auchincloss II, Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for appellee.

Before MESKILL, Chief Judge, FEINBERG and WINTER, Circuit Judges.

MESKILL, Chief Judge:

This is an appeal from a judgment of conviction entered on July 2, 1992 after a jury trial in the United States District Court for the Southern District of New York, Sprizzo, J. During the trial the jury heard evidence that James drove the getaway car from the scene of the armed bank robbery. The jury found appellant William James guilty of aiding and abetting an armed bank robbery in violation of 18 U.S.C. §§ 2113(a), (d) and 2. We affirm the judgment of conviction but remand for resentencing in accordance with our instructions.

James makes five arguments on appeal. First, he contends that the modified supplemental instruction Judge Sprizzo gave during jury deliberations telling the jury that James could be convicted of aiding and abetting the bank robbery even if he did not know of its occurrence until his co-defendant Harry Mackey exited the bank denied him due process and violated Fed.R.Crim.P. 30. James next argues that the district court's modified supplemental instruction was legally erroneous. James also contends that the district court erroneously instructed the jury that he could be convicted of aiding and abetting an armed bank robbery even if he was unaware of the armed robbery prior to Mackey's entering the getaway car. In addition, he argues that, even if the district court's instruction on his liability for armed robbery were correct, there was insufficient evidence to convict him of an armed robbery. Finally, James contends that his sentence should not have been increased for Mackey's use of a gun in the robbery when James did not know of the armed robbery until Mackey exited the bank. Alternatively, he contends that if we decide some enhancement of his sentence is appropriate for Mackey's use of a gun it should be three levels, not four.

We reject all of James' arguments except the one pertaining to his sentence. The district court properly modified its supplemental instruction to tell the jury that James could be convicted of aiding and abetting the bank robbery even if he first learned of the robbery after Mackey exited the bank. This instruction neither denied James due process nor violated Fed.R.Crim.P. 30. The district court's charge on aiding and abetting an armed bank robbery was legally correct and the evidence was sufficient to support James' conviction of this crime. We agree, however, with James' alternative sentencing argument that a three level, not a four level, enhancement is appropriate.

## BACKGROUND

On March 14, 1991, appellant William James drove Harry Mackey to a Citibank branch in Manhattan and waited outside in the car. Mackey entered the bank and committed an armed robbery. During the course of this crime, Mackey hit an assistant bank manager, Everton Rose, with his gun, knocking Rose to the ground. Mackey fled the bank with $250,000. When Rose attempted to follow him, Mackey turned and pointed his gun at him. Rose watched Mackey run toward the car in which James waited, which had started to pull away from the curb. Mackey entered the car and it sped away.

When the police caught up with the car, James drove the car up on a sidewalk, over a median, through a fence and eventually collided with two other vehicles. Both Mackey and James left the car and ran in the same direction. Two eyewitnesses testified that James was carrying a bag and that bundles of money were dropped as the two men fled. James and Mackey then split up. Both were caught and arrested.

On March 22, 1991, a three count indictment was filed. Count one charged James and Mackey with conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371. Count two charged James and Mack-

ey with armed bank robbery in violation of 18 U.S.C. §§ 2113(a), (d) and 2. Count three charged Mackey alone with using and carrying a firearm during, and in relation to, an armed bank robbery, in violation of 18 U.S.C. § 924(c). On September 4, 1991, the district judge severed James' and Mackey's cases for trial.

James testified in his own defense. He claimed that he thought he was taking Mackey to a drug treatment program. James testified that he did not know that Mackey planned to enter the Citibank and rob it and that, when Mackey entered James' car after leaving the bank, Mackey forced James at gunpoint to drive away.

When discussing the issue of aiding and abetting at the charge conference, the judge stated that he would instruct the jury that to be guilty of aiding and abetting James had to have engaged in conduct designed to, and which in fact did, assist in the commission of the offense. In his summation to the jury, the prosecutor argued that the evidence supported the government's theory that James knowingly and willfully participated in the bank robbery by acting as the "getaway driver" and that James' testimony was not credible. Defense counsel argued that the evidence did not show that James knew Mackey was going to rob the bank and urged the jury to accept James' duress defense to explain why he drove the getaway car.

During his charge to the jury Judge Sprizzo stated, "before you may find this defendant guilty on the theory of aiding and abetting, you must find that Mr. James not only knew that Mr. Mackey was in there robbing the bank, but that Mr. James intended by some conduct of his to assist Mr. Mackey in the commission of the bank robbery." The judge also instructed the jury on the difference between armed and simple bank robbery and on the defense of duress.

During the second day of its deliberations, the jury sent a note to the judge inquiring whether James would have had the requisite knowledge under the law of aiding and abetting if he had only become aware of the

robbery after the incident in the bank but then in the car decided to participate. Out of the presence of the jury, the judge pointed out to counsel that the government had not charged James as an accessory after the fact and stated that if James had knowledge only after the fact he would not be guilty as an aider and abettor. The government disputed that this was the law but could cite no specific authority for its contention. The court, therefore, gave a supplemental charge stating that aiding and abetting requires knowledge and participation with an intent to assist the commission of the offense prior to the time that the offense is committed.

Later that day, the government provided Judge Sprizzo with legal authority that the supplemental charge on aiding and abetting he had given was legally incorrect. Defense counsel argued that if the judge reversed his previous two instructions it would be extremely prejudicial and would highlight the issue unfairly. When defense counsel conceded that he could find no cases that contradicted those which the government had provided, Judge Sprizzo, over defense objection, reversed his previous supplemental instruction.[1] The judge told the jury that subsequent research had revealed that he had incorrectly answered its question and that James would be guilty even if he participated in the robbery only after Mackey exited the bank.

Less than three hours later, the jury found James guilty of aiding and abetting armed robbery but acquitted him of conspiracy to commit armed robbery. The jury answered "no" to an interrogatory asking if the government had proved that prior to Mackey's exiting the bank James knew Mackey was going to commit a bank robbery. The judge orally denied a defense motion to vacate James' conviction for aiding and abetting an armed robbery and to enter instead a conviction for aiding and abetting a simple bank robbery. Judge Sprizzo sentenced James to 188 months imprisonment to be followed by five years supervised release, and he imposed a $50 mandatory assessment.

---

1. We will refer to this second supplemental instruction as the "modified supplemental instruction" and to the first supplemental instruction Judge Sprizzo gave in response to the jury's inquiry as the "supplemental instruction."

## DISCUSSION

### A. *Due Process and Fed.R.Crim.P. 30 Claims*

James first argues that the district court's modified supplemental instruction during jury deliberations telling the jury that he could be convicted of aiding and abetting the bank robbery even if he did not know of the robbery until Mackey exited the bank denied him his right to due process and violated Fed.R.Crim.P. 30. He contends that the instruction amounted to a new theory of liability which he was not given the opportunity to address. His arguments are not persuasive.

■ James objected to the modified supplemental instruction arguing to Judge Sprizzo that it would "be extremely prejudicial and highlight the issue very unfairly to tell the jury that you have to tell them something different now." He also argued that the court was not obligated to correct its supplemental instruction because there was no direct authority from this Court and that, if it did give a modified supplemental instruction, it should also give a new instruction on the different requirements for armed and simple bank robbery. However, James never argued to the district judge that giving the modified supplemental instruction violated Rule 30, that the instruction amounted to a new theory of liability or that he was denied the right to an effective summation. James was "obligated to state 'distinctly the matter to which [he] object[ed] and the grounds of the objection.'" *United States v. Tannenbaum*, 934 F.2d 8, 14 (2d Cir.1991) (quoting Fed.R.Crim.P. 30). Because James did not raise before the district court the arguments he now makes on appeal, our review is limited to a determination of whether the district court committed plain error. *Id.; see also United States v. Torres*, 901 F.2d 205, 227–28 (2d Cir.) (even if appellants state distinctly the matter to which they object and the grounds for their objection, this does not suffice to preserve an objection for appeal absent plain error, if the grounds stated at trial are different from those raised on appeal), *cert. denied sub nom. Cruz v. United States*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990).

■ We have previously stated that "[i]f a supplemental charge is legally correct, the district court enjoys broad discretion in determining how, and under what circumstances, that charge will be given." *United States v. Civelli*, 883 F.2d 191, 195 (2d Cir.), *cert. denied*, 493 U.S. 966, 110 S.Ct. 409, 107 L.Ed.2d 374 (1989). The Fourth Circuit has cautioned, however, that the effect on the trial of a supplemental instruction must be examined carefully because "a defendant must have an adequate opportunity to argue his innocence under the district court's instructions in order to be assured a fair trial." *United States v. Horton*, 921 F.2d 540, 546–47 (4th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2860, 115 L.Ed.2d 1027 (1991). After careful examination, we conclude that Judge Sprizzo did not commit plain error in giving a modified supplemental instruction to rectify the legally incorrect supplemental charge he had previously given.

The district court's supplemental instruction and its modified supplemental instruction were given in response to an inquiry by the jury. Neither the government nor the defense had requested a charge on this expanded theory of liability. As the judge stated to counsel, "I got no request to charge on [this]. So I am doing something at the last minute that I could have done before deliberation, before the trial even started." When the government provided the district judge with authority from four different circuits that contradicted the supplemental jury instruction, the judge properly gave a modified supplemental instruction correcting his prior erroneous statement. *See Horton*, 921 F.2d at 546 ("[T]he trial court has a duty '[w]hen a jury makes explicit its difficulties' to 'clear them away with concrete accuracy.'") (quoting *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405–06, 90 L.Ed. 350 (1946)).

Contrary to James' assertion, the modified supplemental instruction did not fundamentally change the government's theory of liability. James contends that the theory the government argued to the jury was that this was a straightforward case in which James was waiting outside the bank ready to act as the getaway driver. The government did

seek to convince the jury that James was a knowing participant in the crime from the onset. To do so, however, the government argued in its summation that all the evidence, including the evidence of the escape phase, showed that James knowingly aided and abetted the robbery. The government focused both on what happened after Mackey exited the bank as well as on everything that had happened earlier. This case, therefore, is distinguishable from *United States v. San Juan*, 545 F.2d 314 (2d Cir.1976), relied on by the defendant.

In *San Juan*, we reversed the conviction of the defendant because the district court's instruction left open the possibility that the defendant could be held liable on a different theory than the one on which both parties had tried and argued the case.[2] As we explained in *United States v. Russo*, 564 F.2d 2 (2d Cir.1977): "In [*San Juan*] the government repeatedly made clear its theory of the case and specifically rejected the alternative theory suggested for the first time in the court's charge to the jury. As a result, we ruled that the defendant's conviction was unfair in that she was led by the unequivocal representations of the government to forego certain defenses she might otherwise have asserted." *Id.* at 4 n. 2. Here, as in *Russo*, "appellant's claim of prejudice is much less compelling." *Id.* The government never made representations that led James to forgo any defenses he might otherwise have asserted. We conclude, therefore, that James' due process rights were not plainly abridged by Judge Sprizzo's modified supplemental instruction.

■ James also contends that Rule 30 was violated because he was not given an opportunity to reargue the case to the jury after the judge gave the modified supplemental instruction. Rule 30 requires the district judge who is trying a case to inform counsel prior to summations of his rulings on requests to charge to afford the parties an opportunity to frame their closing remarks to accord with the court's subsequent legal instructions. *See, e.g., United States v. Eisen*, 974 F.2d 246, 256 (2d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1840, 123 L.Ed.2d 467 (1993). "If the Rule is violated, reversal is required where the defendant can show that he was 'substantially misled in formulating his arguments' or otherwise prejudiced." *Id.* (quoting *United States v. Smith*, 629 F.2d 650, 653 (10th Cir.), *cert. denied*, 449 U.S. 994, 101 S.Ct. 532, 66 L.Ed.2d 291 (1980)).

James never requested the opportunity to have additional argument. Nor did he argue to the district court that his closing argument would have been different had he known the modified instruction was to be given. Having failed to request additional argument and having thereby deprived Judge Sprizzo of the opportunity to correct any potential error, his argument on appeal that Fed.R.Crim.P. 30 was violated because he was never given the chance to reargue is without merit and certainly does not constitute plain error.

Furthermore, even if Rule 30 had been violated, James was not prejudiced by the modified supplemental instruction. There appears to be nothing material about James' testimony or defense that would have been presented differently had the defendant known the modified supplemental instruction would be given. *See Horton*, 921 F.2d at 548 ("Though one can always argue longer and more fully, [appellant's] arguments were sufficiently developed in the initial closing.").

### B. *Legal Accuracy of the Modified Supplemental Instruction*

■ James next argues that the court's modified supplemental instruction telling the jury that he could be convicted of aiding and abetting the robbery even if he did not know of its occurrence until Mackey exited the bank was erroneous as a matter of law. He claims that it is axiomatic that a defendant cannot be found guilty of aiding and abetting a crime under 18 U.S.C. § 2 if the crime was committed before the defendant provided any

---

**2.** In *San Juan,* the defendant was convicted of violating the Bank Secrecy Act by transporting more than $5,000 into the United States without filing a report. The prosecutor and defense counsel tried the case on the theory that the alleged crime occurred on the bus. 545 F.2d at 318. We noted, however, that the judge's charge left open the possibility that the jury could find that the crime was committed in the customs house. *Id.* at 319.

aid. James contends that a defendant who did not know about a robbery prior to driving the robber from the bank may be properly convicted under 18 U.S.C. § 3 as an accessory after the fact but not as an aider and abettor. This distinction is important because in cases where the principal would not be subject to life imprisonment or the death penalty, 18 U.S.C. § 3 provides that, "[e]xcept as otherwise expressly provided by any Act of Congress, an accessory after the fact shall be imprisoned not more than one-half the maximum term of imprisonment or fined not more than one-half the maximum fine prescribed for the punishment of the principal, or both." Under 18 U.S.C. § 2, on the other hand, an aider and abettor is punishable as a principal.

■ There is ample authority from other circuits for the proposition that one who assists in the escape phase of a bank robbery is an aider and abettor of that robbery, and not an accessory after the fact. *See, e.g., United States v. Martin,* 749 F.2d 1514, 1518 (11th Cir.1985) (stating that the crime of bank robbery "continues throughout the escape for purposes of characterizing the involvement of additional parties who knowingly and willfully join in the escape phase only" (quotation omitted)); *United States v. McCaskill,* 676 F.2d 995, 1000 (4th Cir.) (stating that the escape phase of a bank robbery is part of the robbery), *cert. denied,* 459 U.S. 1018, 103 S.Ct. 381, 74 L.Ed.2d 513 (1982); *United States v. Wilkins,* 659 F.2d 769, 773 (7th Cir.) (stating that "[t]he getaway is part of the robbery; therefore, the driver of the getaway car is a principal in the crime of robbery and not a mere accomplice after the fact"), *cert. denied,* 454 U.S. 1102, 102 S.Ct. 681, 70 L.Ed.2d 646 (1981); *United States v. Willis,* 559 F.2d 443, 444 (5th Cir.1977) (per curiam) (stating that "escape immediately following the taking is a necessary phase of most violent bank robberies ... [, and] the robbery is not a consummate transaction until the immediate removal phase comes to a halt"); *United States v. Jarboe,* 513 F.2d 33, 37 (8th Cir.) (stating that the offense described in 18 U.S.C. § 2113(a) extends to period of hot pursuit), *cert. denied,* 423 U.S. 849, 96 S.Ct. 90, 46 L.Ed.2d 71 (1975); *United States v. Von Roeder,* 435 F.2d 1004, 1010 (10th Cir.

1970) (stating that "[o]ne who participates in and assists in the escape of the parties who were in the bank aids and abets the bank robbery, and is properly charged as a principal"), *cert. denied sub nom. Gonzales v. United States,* 403 U.S. 934, 91 S.Ct. 2264, 29 L.Ed.2d 713, and *vacated on other grounds sub nom. Schreiner v. United States,* 404 U.S. 67, 92 S.Ct. 326, 30 L.Ed.2d 222 (1971) (per curiam).

In *United States v. Grubczak,* 793 F.2d 458 (2d Cir.1986), during our discussion concerning whether the evidence was sufficient in that case to support the defendant's conviction for aiding and abetting an armed robbery, we stated: "Since the robbery itself was continuing through this escape phase, ... defendant's knowledge of a weapon at this point was sufficient to support a conviction for aiding and abetting an armed robbery." *Id.* at 464. We cited the Eleventh Circuit's decision in *Martin* and the Fifth Circuit's decision in *Willis* in support of this proposition. *Id.* When the government brought our statement in *Grubczak* to the attention of the district judge in the case at hand, the judge expressed concern that it was only dictum in view of the other bases for our holding in that case. We now make our reasoning explicit: The escape phase of the crime of bank robbery is part of the ongoing robbery, not an event occurring after the robbery, for purposes of characterizing the involvement of a party who knowingly and willfully joins in the escape phase only. Such a party is properly liable as a principal in the crime of bank robbery, rather than as an accessory after the fact. Therefore, the district court properly instructed the jury that James could be guilty of aiding and abetting even if he only participated in the escape phase of the robbery.

C. *Legal Accuracy of the Instruction on Armed Bank Robbery*

■ When the district judge gave his modified supplemental instruction clarifying that a person can be guilty of aiding and abetting a bank robbery if he participates after the time the bank was robbed but during the escape phase, he also instructed the jury: "I would stress to you, however,

that if you were to find Mr. James guilty with respect to the armed bank robbery aspect of the case, you must find that he knew that he was aiding and abetting an armed bank robbery as opposed to a simple bank robbery." James argues that this instruction concerning liability for armed bank robbery as opposed to simple bank robbery was incorrect in two ways. First, James argues that the judge did not instruct the jury that to be guilty James must have engaged in a purely voluntary act intended to aid Mackey's use of the weapon. Second, James argues that the judge did not instruct that James must have specifically intended that his act aid Mackey in the use of the weapon. James contends that the judge should have instructed the jury that "appellant had to have aided and abetted the robbery with 'aware[ness] of the likelihood that [a gun] *would be* used'" (quoting our opinion in *Grubczak*, 793 F.2d at 463 (emphasis added by James)).

The flaw in James' contentions is illustrated by the first sentence in his brief addressing this argument. He states, "[e]ven if the offense of bank robbery includes the 'hot pursuit' escape phase, a defendant who is unaware of the robbery (and hence of the principal's use of a gun during the robbery) *until after it has occurred* cannot be held liable for punishment [for armed robbery]." (emphasis added). Because we have held that the crime of bank robbery continues through the escape phase, if a defendant learns of the armed robbery during the escape phase he has learned of it *during the robbery*. If at that point he aids and abets the crime, he is guilty of aiding and abetting an armed bank robbery.

In a footnote in *Grubczak* we acknowledged the prevailing view that "in a prosecution for aiding and abetting armed bank robbery, the government must establish not only that the defendant knew that a bank was to be robbed and became associated and participated in that crime, but also that the defendant '"knew that [the principal] was armed and intended to use the weapon, and intended to aid him in that respect."'" *Grubczak*, 793 F.2d at 462 n. 1 (citations omitted). James relies on this reasoning to support his

argument that the jury should have been instructed that he could be convicted of aiding and abetting armed bank robbery only if the jury found that he acted with intent to aid and abet the assault which occurred inside the bank. James' reliance is misplaced. As we noted above, in *Grubczak* we also clearly stated that "[s]ince the robbery itself was continuing through this escape phase ... defendant's knowledge of a weapon at this point [during the escape phase] was sufficient to support a conviction for aiding and abetting an armed robbery." 793 F.2d at 464 (citations omitted). The district court's modified supplemental instruction properly explained liability for aiding and abetting armed bank robbery in accordance with our reasoning in *Grubczak*.

D. *Sufficiency of the Evidence of Aiding and Abetting Armed Robbery*

■ James also argues that even if the district court's instruction on his liability for armed robbery were correct, the jury's conclusion that James neither planned nor had knowledge of the bank robbery until after Mackey exited the bank highlights the insufficiency of the evidence presented to support James' conviction for armed robbery. James only challenges the sufficiency of the evidence supporting the "armed" component of his conviction for aiding and abetting armed robbery.

■ Our standard for reviewing the sufficiency of the evidence is well established. In a criminal prosecution, the government bears the burden of proving beyond a reasonable doubt every element necessary to convict the defendant. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Once this has occurred, and the defendant challenges the sufficiency of the evidence, the defendant bears a heavy burden. *See, e.g., United States v. Tejada*, 956 F.2d 1256, 1265 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 124, 121 L.Ed.2d 80 (1992). The conviction will be upheld if "'"after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'" *Id.* (quoting *United States v. Roldan–Zapata*,

916 F.2d 795, 802 (2d Cir.1990) (citations omitted), *cert. denied,* —— U.S. ——, 111 S.Ct. 1397, 113 L.Ed.2d 453 (1991)).

James testified that when Mackey entered the car after exiting the bank, Mackey had a brown canvas bag and a gun. Therefore, it is indisputable that James knew Mackey had a gun during the escape phase of the robbery. Under our reasoning in *Grubczak* and our holding today, this testimony was sufficient to support his conviction for armed robbery as opposed to simple robbery. James' contention that "[p]ermitting a conviction based on mere post-robbery knowledge of Mackey's possession of a gun would vitiate the requirement of proof that James had the specific intent to aid the armed element of the robbery," is without merit. James' testimony establishes that he aided and abetted Mackey in the commission of the crime knowing that Mackey had a gun. Therefore, he aided and abetted an armed, not a simple, robbery.

### E. *Sentencing Guidelines*

Finally, James argues that the judge should not have increased his sentence for the use of a gun during the robbery because James did not know of the weapon until Mackey exited the bank. At sentencing, Judge Sprizzo rejected this argument and enhanced James' base offense level four points pursuant to United States Sentencing Guidelines (Guidelines) § 2B3.1(b)(2)(B) which states, "if a dangerous weapon (including a firearm) was otherwise *used,* increase by 4 levels." (emphasis added).[3] The judge also rejected James' alternative argument that if the judge were going to make any enhancement it should be a three level enhancement pursuant to Guidelines § 2B3.1(b)(2)(C) which provides that "if a dangerous weapon (including a firearm) was brandished, displayed, or possessed, increase by 3 levels."

Although Mackey injured an employee while inside the bank and restrained bank employees to facilitate his escape, the judge refused to accept the government's argument that James' sentence should be enhanced

further. The judge said it was not appropriate to make the aider and abettor the insurer of everything that happens in the bank. He explained that because a person who does not decide to participate in a bank robbery until the escape phase "has done nothing to induce or cause or bring about what has already occurred at the bank, the law can't be as tough on him as it would be on a person whose acquiescence beforehand has encouraged the others to go ahead and rob the bank."

The judge stated, however, that, as a legal matter, anyone who aids and abets an armed robbery even during the escape phase should be charged with the four levels for use of the gun "on the theory that when you aid and abet an armed robbery, you in effect take it as you find it." Alternatively, the judge stated, the four point enhancement was also proper because he found that Mackey had used the gun during the escape phase when he "brandish[ed] it at a bank employee on the street and as he got into the car." Relying on Rose's testimony that James had already begun to pull the car away from the curb by the time Mackey entered the vehicle, Judge Sprizzo found that James knew of the robbery when Mackey brandished his gun at Rose on the street before he entered James' car.

■ "[W]hile the clearly erroneous standard is appropriate where the district court's determination resembles a finding of fact, *de novo* review is required where the application of the guidelines approaches a purely legal question." *United States v. Vazzano,* 906 F.2d 879, 883 (2d Cir.1990). We accept the district court's finding that Mackey brandished the gun on the street and that James was aware of this. The district court's conclusion, however, that this constitutes "use" of a firearm which would result in a four level enhancement under § 2B3.1(b)(2)(B) is incorrect. The government conceded during oral argument that when Mackey pointed his gun at Rose as Rose attempted to follow him onto the street this constituted "brandishing" a weapon under the Guidelines which, if at-

---

**3.** Because the crime at issue occurred in March of 1991, the district court applied the version of

the Guidelines that became effective on November 1, 1990.

tributed to James, would result in a three level enhancement. *See* Guidelines § 1B1.1, Application Note 1(c).[4] Therefore, we reject the alternative reason articulated by the district court for the four level enhancement.

We now address the other reason the district court articulated for imposing the four level enhancement which was "when you aid and abet an armed robbery you take it as you find it." We disagree that the Guidelines support such a conclusion. Although James did not use a gun during the armed robbery, under the Guidelines, Mackey's use of a gun by striking Rose with it inside the bank can be attributed to James through the application of the relevant conduct principle. Section 1B1.3 defines relevant conduct to be used in determining specific offense characteristics as "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable." The commentary to this section explains that "[i]n the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant 'would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was *reasonably foreseeable* by the defendant." Guidelines § 1B1.3, Application Note 1 (emphasis added). Therefore, the standard mandated by the Guidelines for sentencing a defendant convicted of aiding and abetting an armed robbery is different than the criminal law standard for convicting a defendant of this crime. For sentencing purposes, the Guidelines require us to inquire whether it was reasonably foreseeable to James when he decided to drive the getaway car that Mackey had already used the gun inside the bank.

We agree with the district court that application of the concept of reasonable foreseeability to something that has already happened is almost an oxymoron. Black's defines "foreseeability" as "[t]he ability to see or know in advance." *Black's Law Dictionary* 649 (6th ed. 1990). We cannot uphold a

determination that it was "reasonably *foreseeable*" to James when he decided to act as a getaway driver that Mackey had already used the gun inside the bank to strike a bank employee. To uphold such a determination would be to manipulate judicially the meaning of the "reasonable foreseeability" inquiry in a manner that would defeat the mandate of the Guidelines.

A proper application of the Guidelines' reasonable foreseeability inquiry leads us to conclude that James should be held accountable for Mackey's brandishing the gun as he entered the car during the escape phase.[5] The district judge found that James had already begun to pull away from the curb by the time Mackey entered the car. Even if James did not participate in the bank robbery until this point, having already seen Mackey brandish the gun at Rose on the street, it was reasonably foreseeable to James that Mackey would continue to brandish the gun during the escape phase. Therefore, we remand to the district court with instructions to resentence James imposing a three level enhancement pursuant to Guidelines § 2B3.1(b)(2)(C) instead of the four level enhancement it had imposed pursuant to § 2B3.1(b)(2)(B).

Given James' criminal history category, a three level enhancement results in a sentencing range of 168–210 months rather than the 188–235 months range dictated by a four level enhancement. Judge Sprizzo originally sentenced James to 188 months, the bottom of the applicable range, noting that this was a very long sentence but that the law gave him no discretion. Of course, we express no opinion on where in the applicable range the judge should resentence James.

## CONCLUSION

We affirm the judgment of conviction but vacate James' sentence and remand to the district court for resentencing in a manner not inconsistent with this opinion.

---

4. Mackey's striking the bank manager with the gun is an example of how a firearm can be "otherwise used" within the meaning of the Guidelines. *See* § 1B1.1, Application Note 1(g).

5. We accept the district court's finding at sentencing that Mackey brandished the gun as he got into the car.