UNITED STATES of America, Appellee,

v.

Troy STEPHENS, Defendant–Appellant.

No. 1886, Docket 92–1553.

United States Court of Appeals,
Second Circuit.

Argued Aug. 10, 1993.

Decided Oct. 7, 1993.

Robert C.E. Laney, Westport, CT (Stanley P. Atwood, Sherwood, Garlick, Cowell, Diviney & Atwood, P.C., of counsel), for defendant-appellant.

Theodore B. Heinrich, Asst. U.S. Atty., D.Conn., Bridgeport, CT (Albert S. Dabrowski, U.S. Atty., D. Conn., New Haven, CT, of counsel), for appellee.

Before: WINTER, MINER and WALKER, Circuit Judges.

MINER, Circuit Judge:

Defendant-appellant Troy Stephens appeals from a judgment of conviction and sentence entered in the United States District Court for the District of Connecticut (Daly, J.), after a jury trial, convicting him of one count of possession of stolen mail, in violation of 18 U.S.C. § 1708 (1988). For purposes of sentencing, the district court attributed to Stephens the value of all the checks found in the mail and decided that the involvement of a weapon in the planning of the offense warranted an upward departure of five levels to arrive at Stephens' adjusted offense level. The court did not articulate its reasons for the extent of the departure. Stephens was sentenced to a term of imprisonment of twenty-two months, to be followed by a three-year term of supervised release, and was ordered to pay a special assessment of fifty dollars. For the reasons that follow, the sentence is vacated, and the case is remanded to the district court for resentencing, including a statement of reasons for any upward departure deemed appropriate under the circumstances.

## BACKGROUND

On February 3, 1992, two men robbed United States Letter Carrier James E. Warren at gun point, taking a mailbag that contained welfare checks to be delivered that day. Although the gun was not fired during the course of the robbery, it was pointed at Warren's chest. The stolen checks were drawn for varying amounts totaling approximately $26,000.

The following day, Willie Williams was arrested after attempting to cash one of the stolen checks. In an interview with United States Postal Inspectors (the "Inspectors"), Williams stated that he was not involved in the robbery and named Darius Miller and Stephens as the culprits. Williams said that he received the stolen check from Miller.

On February 5, the Inspectors arrested Miller and charged him with the armed robbery of a mailman. The next day, Miller agreed to cooperate with the Inspectors. As a consequence of that cooperation, the Inspectors retrieved the mailbag from a dumpster behind Williams' apartment and found Stephens' and Williams' fingerprints on various pieces of the recovered mail.

On February 10, Stephens turned himself in to the federal authorities and was arrested for armed robbery. Stephens told the Inspectors that: he and Miller were playing pool together on the day of the robbery; Miller left for fifteen to twenty minutes and returned, asking Stephens to go to Williams'

apartment with him; at Williams' apartment, Williams hurriedly changed his clothes; and the three then went to Stephens' apartment, where Williams dumped stolen mail onto the kitchen table. On March 26, Stephens was indicted on one count of armed robbery of a letter carrier, in violation of 18 U.S.C. § 2114, and on one count of knowing possession of stolen mail, in violation of 18 U.S.C. § 1708.

Shortly before trial, Williams pled guilty to aiding and abetting the robbery but did not enter into a cooperation agreement with the government. At trial, Williams testified that Miller and Stephens asked him for his gun and that he agreed to give it to them so long as they gave him a portion of the proceeds. He also testified that, when Stephens and Miller returned, Stephens bragged that he would have shot the mailman and called Miller a "punk" because he did not do anything. Miller, who entered into a cooperation agreement with the government, testified that: he and Stephens planned the robbery; obtained the gun from Williams; robbed the mailman; brought the mail back to Williams' apartment, where they separated the checks from the other mail; and went to Stephens' apartment, where they divided up the checks.

An eyewitness, Emanuel Roan, testified for the government that he saw Miller and Stephens run down the sidewalk and that Stephens was carrying a mailbag and a gun. Another government witness, Thea Kelly, testified that, while she was at Williams' apartment visiting Williams' girlfriend, Stephens and Miller came by, met briefly with Williams and then left. They returned approximately fifteen minutes later, and one of them said, "Yo, we got the mailman." Kelly said that she left the room while Williams, Miller and Stephens sorted the mail. Stephens called three witnesses who testified that the two men running down the street were Miller and Williams but not Stephens. Stephens did not testify.

On June 10, 1992, the jury acquitted Stephens of armed robbery and convicted him of possessing stolen mail. Thereafter, the Probation Department prepared a presentence report ("PSR"). The PSR included calculations indicating that Stephens' applicable guidelines range was six to twelve months, reflecting a criminal history category of I and a base offense level of ten. Pursuant to the guideline for possession of stolen property, U.S.S.G. § 2B1.2, Stephens had a base offense level of four, which was increased by six levels to ten in order to reflect the $26,-000 value of the stolen mail. Stephens objected to the recommendation in the PSR that he be held responsible for the entire value of the stolen mail. He argued that he should be sentenced according to the value of only the three checks on which his fingerprints were found. The total value of the three checks was $1133.25.

On September 9, the district court issued a notice of grounds for a possible sentencing departure. The district court indicated that it was contemplating an upward departure under U.S.S.G. § 5K2.0 due to the involvement of a firearm in the underlying offense conduct. Stephens objected to this upward departure, arguing that, since he was acquitted of the robbery, use of the firearm should not be imputed to him. At a sentencing hearing on September 16, the district court rejected Stephens' objections to the PSR. The district court then made a five-level upward departure based upon the presence of a gun that was connected with the offense of conviction. The district court found:

I am not going to sentence the Defendant—and I'm not sure it's being suggested that I should—on the basis of the count on which he was acquitted.

. . . .

That does not remove, however, from the case two elements which I think are proven and relate to the count of conviction. . . .

I also think there's adequate evidence, more than adequate evidence by any standard that I've ever used in any sentencing that there was a gun involved here, involved at all times. And I'm going to depart upward on that basis so that we end up with a sentencing range of 18 to 24 months.

. . . .

And I do depart from 10 to 15 based on the fact that a gun was involved. And I'm

not talking about the gun being involved when the postman was being held up. I'm talking about a gun being involved in the scheme generally, I think, among other things, the planning to possess stolen mail, however one possessed it.

Sentencing Transcript, Sept. 16, 1992, ("Tr.") at 11–14. As a result of the five-level upward departure, the applicable guidelines range was eighteen to twenty-four months. The district court sentenced Stephens to a term of imprisonment of twenty-two months.

## DISCUSSION

Stephens contends primarily that the district court erred in sentencing by: (1) attributing to him the value of all of the stolen checks; and (2) departing upward by five levels for the involvement of a firearm in the underlying conduct of possessing stolen mail. We reject Stephens' first argument; we accept his second argument to the extent that we remand the case for resentencing, the district court to include a statement of reasons for any upward departure it may determine to be appropriate.

### 1. The Value of the Stolen Mail

■ The district court determined that Stephens was responsible for possessing all the mail stolen from the mailman. The district court found: "[Stephens is] responsible for possession of all that mail and the evidence, as I heard it, or the contents of that mail. And so the six-level departure for the $26,000 value will be applied. It's not a departure, but it becomes a part of the crime." Tr. at 12. Stephens asserts that he should be held responsible for only the amount of the checks on which his fingerprints were found or, at the most, for only one-third of the total value of the checks.

If the value of stolen property exceeds $100, U.S.S.G. § 2B1.2(b)(1) provides for a graduated increase in a base offense level to reflect the value of the stolen property and refers to a table in section 2B1.1 listing the appropriate base offense level increase corresponding to the value of the stolen property. Pursuant to the version of section 1B1.3(a) in effect at the time of sentencing, the value of the stolen property is determined on the basis of the relevant conduct, which includes "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a)(1) (1991). According to the application notes, "[i]n the case of criminal activity undertaken in concert with others, ... the conduct for which the defendant 'would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." Id. § 1B1.3, application note 1 (1991).

Here, it is undisputed that the value of the stolen checks was $26,000. Evidence offered at trial established that Stephens, Miller and Williams segregated the envelopes containing the checks from the rest of the stolen mail, opened the envelopes, and divided the contents among themselves. Therefore, Stephens is accountable for the entire amount of the stolen checks because he aided and abetted the others in connection with their possession of the stolen mail. Moreover, Stephens engaged in concerted criminal activity in possessing the stolen mail and is accountable for the entire $26,000 because the conduct of Miller and Williams was in furtherance of the jointly undertaken criminal activity and was reasonably foreseeable. See id. Thus, the district court's determination that Stephens was responsible for the full $26,000 value of all of the stolen checks was proper.

### 2. Presence of a Firearm

#### (a) Departure Warranted

Stephens argues that the district court's five-level upward departure from the applicable guidelines range due to the involvement of a gun was unwarranted because: (1) there was an insufficient factual basis for the district court's determination that Stephens knew that a gun was involved; and (2) the guidelines already adequately consider the presence of a firearm in determining the base offense level under section 2B1.2.

■ First, Stephens' contention that there was insufficient evidence to show that he

knew a gun was involved in the offense lacks merit. Both Miller and Williams testified that Stephens knew there was a gun, and Williams testified that Stephens and Miller came to his apartment asking to use his gun and that he gave them his gun. This version of the events was supported by Kelly's testimony that Stephens and Miller arrived together and met with Williams at the apartment. Considering this and other evidence, the district court's factual determination was not clearly erroneous. *See United States v. Barone,* 913 F.2d 46, 50 (2d Cir.1990).

We also reject Stephens' contention that the guidelines already contemplate the use of a weapon in a possession of stolen property offense. Stephens argues that guidelines section 2B1.2(b)(2) indicates that the Commission accounted for the presence of a weapon for a section 2B1.2 offense. Section 2B1.2(b)(2) provides for a specific enhancement if the stolen property "included a firearm, destructive device, or controlled substance." This is not a case in which the stolen property included firearms, and Stephens did not receive an enhancement pursuant to section 2B1.2(b)(2).

■ The Sentencing Reform Act provides that a district court shall impose a sentence within the applicable guidelines range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b) (1988). A district court has "wide discretion" and "sensible flexibility" in determining whether aggravating circumstances exist to support an upward departure. *United States v. Palta,* 880 F.2d 636, 639 (2d Cir.1989). The policy statement found in section 5K2.0 also provides for a measure of discretion: "Presence of any such factor [aggravating or mitigating circumstances not adequately considered by the Guidelines] may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing court." U.S.S.G. § 5K2.0. The policy statement continues:

> Also, a factor may be listed as a specific offense characteristic under one guideline but not under all guidelines. Simply be-

cause it was not listed does not mean that there may not be circumstances when that factor would be relevant to sentencing. For example, the use of a weapon has been listed as a specific offense characteristic under many guidelines, but not under immigration violations. Therefore, if a weapon is a relevant factor to sentencing for an immigration violation, the court may depart for this reason.

*Id.* Furthermore, section 5K2.6 specifically provides that weapons used in the commission of a crime may warrant departure:

> If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others. The discharge of a firearm might warrant a substantial sentence increase.

*Id.* § 5K2.6.

Here, the district court, in its discretion, decided to impose an upward departure based on the evidence that Stephens knew, during the planning stages of the scheme to possess stolen mail, that a gun was going to be used in the robbery of the mailman. Because section 2B1.2 does not contemplate the involvement of a weapon in the offense conduct (except when a firearm is the property stolen), the district court properly considered an upward departure to account for the involvement of a weapon in the scheme underlying the offense for which Stephens was convicted. *See id.* § 5K2.6. Since it was reasonably foreseeable to Stephens that the gun would be used forcibly to obtain the mail and would create a risk of injury to the mailman, an upward departure was appropriate. *See id.* § 5K2.6; *United States v. James,* 998 F.2d 74, 83 (2d Cir.1993).

### (b) Extent of the Departure

Stephens contends that the district court's five-level departure was excessive and unreasonable because: (1) it was inconsistent with the treatment of a gun under the guidelines

in analogous circumstances; and (2) it failed to utilize a multi-count and sequential analysis, *see United States v. Kim*, 896 F.2d 678, 684 (2d Cir.1990).

A reviewing court must bear in mind that when conduct not taken into account by the Guidelines provisions applicable to the defendant provides the basis for an upward departure, the court should not arrive at a sentence that exceeds the penalty that would have been imposed had the defendant been sentenced under other Guidelines provisions that do take the same or similar conduct into account. This goal is accomplished when the court looks to analogous Guidelines provisions to determine the extent of the departure.

*United States v. Rodriguez*, 968 F.2d 130, 140 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 140, 121 L.Ed.2d 92 (1992). One analogous guidelines provision that takes into account conduct similar to that of Stephens' is section 2B3.1(b)(2)(C), which provides for a five-level enhancement if a firearm is "brandished, displayed, or possessed" during the course of a robbery. If it could be said that Stephens' conduct was the same or similar to that referred to in section 2B3.1(b)(2)(C), a five-level upward departure would not be improper.

■ Stephens argues that analogies to the guidelines for drug related offenses and burglary are more appropriate and that the district court should have increased his base offense level by only two levels. Section 2D1.1 provides for a two-level enhancement if a dangerous weapon is possessed in a drug-related offense. This analogy, however, does not account for the fact that there was a victim in this case who was put in fear and danger by the brandishing of the gun. Stephens' analogy to the guidelines for burglary, sections 2B2.1 and 2B2.2, providing for a two-level enhancement when a firearm is possessed in connection with a burglary, also may be problematic. The commentary to those sections explains that a two-level enhancement may be insufficient if a weapon is used or used to threaten: "Weapon possession, but not use, is a specific offense characteristic because use of a weapon (including to threaten) ordinarily would make the offense

robbery. Weapon use would be a ground for upward departure." U.S.S.G. §§ 2B2.1, 2B2.2, background. Applying this commentary, and because there is evidence here that the weapon was used to threaten the mailman, an increase greater than two levels may be appropriate. With respect to Stephens' second contention, "*Kim* does not require that an offense-level departure be accompanied by a mechanical level-by-level review of the extent of the upward departure." *United States v. Mandel*, 991 F.2d 55, 57 (2d Cir.1993) (internal quotations omitted). Rather, a review of a departure must focus on whether the "reasons given by the district court … are sufficient to justify the magnitude of the departure." *Williams v. United States*, —— U.S. ——, ——, 112 S.Ct. 1112, 1121, 117 L.Ed.2d 341 (1992).

In sentencing Stephens, the district court did not articulate its reasons for upwardly departing by five levels instead of by some lesser number. Therefore, even though we find that it was within the discretion of the district court to depart upward by five levels, a remand is necessary. On remand, the district court need only reconsider the issue of the five-level departure and state on the record its reasons for any departure it decides to make. Nothing in the foregoing is to be taken to indicate that we have an opinion as to the appropriate extent of enhancement for the involvement of the weapon in the conduct underlying the offense of conviction in this case.

## CONCLUSION

Stephens' sentence is vacated and the case is remanded to the district court for resentencing in a manner consistent with the foregoing.