57 F.3d 1067
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Michael RUBIO, a/k/a Manny, Defendant-Appellant.
 No. 94-5425.
 United States Court of Appeals, Fourth Circuit.
 Argued April 7, 1995.
Decided June 8, 1995.
 
 ARGUED: Lawrence Evan Besser, Miami, FL, for Appellant. David Bernard Smith, Assistant United States Attorney/Senior Litigation Counsel/OCDETF Attorney, Greensboro, NC, for Appellee.
 ON BRIEF: Walter C. Holton, Jr., United States Attorney, Greensboro, NC, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, and RUSSELL and WILKINS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Michael Rubio appeals from his conviction on one count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. Secs. 846 and 841(a)(1) & (b)(1)(A). Rubio argues that he is entitled to a new trial based on a supplemental jury instruction given by the trial court to correct a previous erroneous instruction. Because defense counsel based part of his closing argument on the original instruction, Rubio alleges that his attorney's credibility with the jury was undermined. Because Rubio was not prejudiced by the trial court's supplemental instruction, we affirm the district court's denial of his motion for a mistrial and his conviction.
 
 I.
 
 2
 On September 27, 1993, a grand jury sitting in the United States District Court for the Middle District of North Carolina indicted Michael Rubio for conspiring to possess with intent to distribute cocaine. A trial was held in January of 1994, during which several witnesses testified regarding the cocaine distribution conspiracy in which Rubio was involved. The conspiracy also included William Propes, part owner of Southern Fish and Seafood in Miami, Florida, and William Locke, the owner of Barnacle Bill's Seafood in North Carolina. Within a couple of months after Propes and Locke first met in March of 1987, Propes began supplying Locke with cocaine to distribute in North Carolina. Around this time, Propes started receiving his cocaine supply from defendant Rubio, who owned "El Pelicano" Seafood. By late 1987, Rubio was selling kilograms of cocaine to Propes, who in turn supplied Locke.
 
 
 3
 Propes testified that Rubio supplied him with approximately eight kilograms of cocaine between late 1987 and October of 1988. Another witness, Southern Fish and Seafood employee Thomas Feacher testified that Locke initially purchased small amounts of cocaine from Propes, but moved up to kilogram purchases by the middle of 1988. Employee Tim Lycke corroborated Feacher's account, testifying that Propes had told him Rubio was selling Propes cocaine in order for Propes to supply Locke. Lycke also had witnessed Rubio delivering a bag to Propes in his office. In addition, Lycke stated during cross-examination that Propes had supplied Locke with a total of four to five kilograms of cocaine. Two other Southern Fish and Seafood employees offered substantially similar descriptions of the drugrelated activities of Locke, Propes, and Rubio.
 
 
 4
 Prior to closing argument, a charge conference was held at which defense counsel made the following remarks concerning the court's proposed instruction regarding the quantity of drugs involved in the conspiracy:
 
 
 5
 [T]he pattern conspiracy [charge] that you gave us yesterday ... says first "a conspiracy," and it sets out the conspiracy with intent to distribute--it says "multiple ounce quantities of cocaine," and that should be changed to "in excess of five kilograms of cocaine."
 
 
 6
 The trial court indicated that it would modify its instruction as proposed and the government voiced no objection.
 
 
 7
 During closing argument, as one of its theories, defense counsel argued that the jury must find an amount of cocaine greater than five kilograms in order to find Rubio guilty. In its charge to the jury, the court instructed the jury likewise. After deliberating for approximately two hours, the jury presented the court with the following question:
 
 
 8
 Do we as a jury need to find that the defendant knowingly, intentionally and unlawfully possessed with the intent to distribute in excess of five kilograms within the time frame of early 1987 up to and including October, 1988 only; specifically, if any transactions alleged to have occurred after October, 1988 are to be considered? In response, the court issued a supplemental instruction:
 
 
 9
 The answer to that is, yes. However, you may write on your jury verdict form, if you find that it was less than five, of whatever you find.
 
 
 10
 A juror then asked whether Rubio was "to be found guilty or not guilty based on that indictment [listing specific dates and amounts], or simply found guilty or not guilty because he may or may not have entered into a conspiracy that was established." The court answered:
 
 
 11
 Well, first you have to decide whether he's guilty or not guilty on the conspiracy. Second, you may find--if you find the conspiracy that he distributed cocaine--period--it would be helpful if you could say the amount, if you find a given amount.
 
 
 12
 Rubio moved for a mistrial on the basis that the supplemental instruction "essentially told the jury that what[defense counsel] argued to them was not true." The court denied defendant's motion. After deliberating further, the jury found Rubio guilty as charged. The court sentenced him to 121 months imprisonment, five years of supervised release, and a $50 assessment. Rubio filed a timely notice of appeal to this court.
 
 II.
 
 13
 This court reviews the denial of a motion for a mistrial under an abuse of discretion standard. United States v. West, 877 F.2d 281, 287-88 (4th Cir.), cert. denied, 493 U.S. 959 (1989). Rubio argues that a mistrial was warranted because the court's supplemental charge to the jury with respect to the amount of cocaine it must find undercut defense counsel's credibility with the jury. Specifically, Rubio alleges that he was prejudiced because his attorney relied on the court's earlier instruction that the jury must conclude that more than five kilograms of cocaine were involved in the conspiracy in order to find Rubio guilty. Appellant cites the following directive from United States v. Spivey, 841 F.2d 799, 803 (7th Cir.1988): "Where the trial judge's remarks effectively destroy counsel's credibility in the eyes of the jury, we will reverse a criminal conviction." In that case, however, the court held that the defendant was not deprived of a fair trial where there was no "overt display of contempt for the defense that occurred in the presence of the jury." Id. at 804.
 
 
 14
 Rubio also relies on the principles underlying Rule 30 of the Federal Rules of Criminal Procedure, which requires a court to "inform counsel of its proposed action upon [instruction] requests prior to their arguments to the jury" in order that counsel may articulate suitable defense theories. In United States v. Horton, 921 F.2d 540 (4th Cir.1990), cert. denied, 501 U.S. 1234 (1991), this court recognized that more than technical compliance with the requirements of Rule 30 of the Federal Rules of Criminal Procedure may be necessary to avoid prejudicing a defendant. See id. at 547 (rejecting "the government's view that there can be no prejudice solely because no Rule 30 violation occurred").
 
 
 15
 The cases cited by appellant do not, however, establish that the discrepancy between the initial and supplemental instructions given by the trial judge in this case entitle Rubio to a new trial. Horton itself indicates that "the necessity, extent and character of any supplemental instructions to the jury" lies within the trial court's discretion. Id. at 546. It is well-settled, and not disputed by Rubio, that drug quantity is not an element of a Sec. 846 conspiracy offense. See United States v. Mills, 995 F.2d 480, 484 (4th Cir.) ("The emphasis of conspiracy law is upon the act, the agreement to violate the law, not the drug amount."), cert. denied, --- U.S. ---, 114 S.Ct. 283 (1993); United States v. Powell, 886 F.2d 81, 85 (4th Cir.1989) ("[T]he quantity of drugs possessed by [the defendant] was a statutory sentencing factor rather than a substantive element of the offense."), cert. denied, 493 U.S. 1084 (1990). Moreover, the inclusion of a specific amount of drugs in an indictment does not cause the amount to become an element of the offense. United States v. Kimberlin, 18 F.3d 1156, 1159 (4th Cir.), cert. denied, --- U.S. ---, 115 S.Ct. 131 (1994). Therefore, the initial instruction was legally erroneous and needed to be corrected, particularly in response to the jury's question directly on that issue. Cf. United States v. James, 998 F.2d 74, 78-81 (2d Cir.) (holding that it is not plain error for a court to give a supplemental instruction to correct a legally erroneous charge previously given), cert. denied, --- U.S. ---, 114 S.Ct. 415 (1993).
 
 
 16
 Based on the foregoing authority, Rubio's allegation of prejudice is misplaced. Appellant cannot object to having a baseless legal argument--even one relying on an erroneous jury instruction--corrected by the court, particularly when defense counsel introduced that error in the first place. The instruction initially proffered by the court required the jury to find only "multiple ounce quantities of cocaine," which is essentially equivalent to mandating that the conspiracy must have involved some amount of the drug. Rubio's predicament would not have arisen had his attorney not asked the trial judge to include a requirement that the jury find "in excess of five kilograms" of cocaine.
 
 III.
 
 17
 Because Rubio was not prejudiced by the trial court's supplemental instruction, the court did not abuse its discretion by denying his motion for a mistrial, and the judgment of conviction against Rubio is thus
 
 
 18
 AFFIRMED.