**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Willie HORTON, Defendant-Appellant.**

**No. 89-5463.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 1, 1990.

Decided Dec. 26, 1990.

Daniel Kagan, Kagan & Kagan, Richard Keith Gilbert, Washington, D.C., for defendant-appellant.

Debra Sue Straus, Sp. Asst. U.S. Atty., argued (Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.

Before SPROUSE, CHAPMAN, and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

This case is significant because it concerns crimes of violence committed by multiple assailants where it is unclear which assailant was the principal. We find that the district court properly instructed on aiding and abetting in response to a jury inquiry and we find no denial of the defendant's right to a unanimous verdict where it is possible that some jurors found him guilty as a principal and some found him guilty as an aider and abettor. Finally, a review of the record discloses that the defendant suffered no prejudice from the time allotted for argument on the supplementary aiding and abetting instruction. Therefore, we affirm the judgment of conviction.

I.

Harold Hoston was murdered in the shower of cellblock 2 of Lorton Reformatory on October 31, 1988. The shower is located on the back right side of the cellblock, which contains two lower tiers and two upper tiers. Though located on the lower tier, the shower is accessible from both tiers, separated directly from the lower tier by a manually operated gate and separated from the upper tier by a set of stairs and another gate at the top of the stairs. The upper-right tier of cellblock 2, where both the decedent and the defendant were housed, contained inmates who were on lockdown status and were allowed out of their cells only for a half-hour of recreation per day and for a shower.

Four officers were on duty in cellblock 2 that night, although only three were present at the relevant time. Under normal procedure, five inmates were allowed out to shower at one time. At approximately 6:00 p.m. that night, the first five residents were let out, including Willie Horton from upper right cell 1, James DaCoster from cell 2, Darron Green from cell 3, Ridley from cell 5 and Gibson from cell 6. Cell 4 was empty. Ridley and Gibson went immediately to the shower area but Horton, DaCoster and Green lingered on the tier talking to residents who were still in

their cells. Steven Lofton in cell 7 testified that Horton, Green and DaCoster came to his cell and Horton told him not to go to the shower because there was going to be a "fight" with Hoston.

At approximately 6:25 p.m., an officer went to the shower area, told Gibson and Ridley that their time was up, and escorted them back to their cells. A second guard then released the next two residents, Steven Lofton from cell 7 and Harold Hoston from cell 8. Harold Hoston went directly down to the shower. There is some dispute as to whether Horton, DaCoster and Green were already in the shower or whether they went down about a minute after Hoston did. Lofton hung around on the tier towards the end near the shower.

At trial, Lofton testified that he heard a scream coming from the shower and went to the balcony overlooking the stairs so that he could see into the shower area. Lofton said Hoston was already bleeding from the chest when he saw Willie Horton stab Hoston in the stomach with a "shank"—or homemade knife. When Hoston tried to run away, Green and DaCoster blocked his way. Lofton saw Horton stab Hoston several more times in the back. Hoston fell near the entrance of the shower. Then, Horton went to the grille of the lower gate carrying the shank; Lofton did not see what he did there. When he saw Horton, Green and DaCoster coming up the stairs, Lofton headed back to his cell.

The guards' stories were not wholly consistent as to the sequence of events and the exact whereabouts of the inmates. Nevertheless, the following is clear. One officer testified that he responded to a "screaming sound" coming from the shower. Two guards saw Horton, Green and DaCoster emerging from the shower walking briskly, faster than normal. When one officer ran down to the shower area, he found Hoston bleeding and lying on his stomach, halfway in the shower and halfway out. He notified the other guards. Hoston was taken to the hospital where emergency measures were unsuccessfully attempted.

After the incident, the unit was locked and "shook down." The shake down consisted of a search of the cells and the inmates for any weapons or signs of scuffle such as bruises or cuts. The body searches of the residents did not reveal any signs of altercation. Three shanks were found. One shank—12½ inches long—was discovered in the lower-right shower area under a sink, laying against a pipe. The second—a half pair of scissors—was wedged between a step and the wall in the stairs leading from the upper tier down into the shower. A third shank, which appeared to have blood stains, was located in a radiator in the middle of the lower tier. In addition, a bloody pair of underwear was found in a cell on the lower tier.

Lab tests disclosed no latent fingerprints and attempts to type blood on the shank and the underwear were inconclusive. The autopsy determined that the cause of death was a stab wound to the heart. Hoston's body revealed a total of nine stab wounds in his chest, back, buttocks and abdomen. The medical examiner testified that any of the three shanks could have inflicted any of the stab wounds.

Horton, Green and DaCoster were indicted for the murder of Harold Hoston under 18 U.S.C. § 1111 and 18 U.S.C. § 2. Green and DaCoster pled guilty to voluntary manslaughter. Horton alone was tried for the murder. At trial, the defense objected to an aiding and abetting instruction that had been submitted by the prosecution. In response, the prosecution agreed to withdraw the instruction but stated that "if evidence of aiding and abetting comes up either in argument of defendants or through the testimony that they put on, we would request it." After closing arguments by counsel, the judge charged the jury but gave no aiding and abetting instruction. The jury began deliberations at 3:55 p.m.

At 4:30 p.m. the court reconvened to consider the following inquiry from the jury: "For any of the verdict [sic] do you have to inflict the body injury, or two, be the one to inflict the fatal injury to be convicted of first-degree murder?" The court suggested that the jury's questions demonstrated the appropriateness of an

aiding and abetting instruction. The government agreed; the defense objected.

While this issue was under consideration, the jury sent out two more questions: "If you were not the one to plan the murder, can you be convicted of first-degree murder?" and "If you are not the only one to premeditate the murder, can you be convicted of first-degree murder?" At 5:22 p.m., the jury was brought back in and the judge gave an instruction on aiding and abetting.

The jury resumed deliberations at 5:25 p.m. At that point, the defense complained that it had not had an opportunity to argue to the jury that there was insufficient evidence to convict Horton of aiding and abetting. The court proposed giving each side three to five minutes of additional argument. The prosecution vigorously opposed any additional argument. The court then stated to the defense: "As a matter of fact, I don't even think it needs to be five minutes. How long do you think you would need, Mr. Brownell, if you argued?" The defense requested ten minutes. The court refused. The defense then requested five minutes, saying it would take whatever it could get. The court allotted each side three minutes of additional argument.

At 6:19 p.m., almost one hour after receiving the supplemental instruction, the jury returned to the courtroom and each side argued in response to the aiding and abetting instruction. Twenty-nine minutes after resuming deliberations, the jury reached a verdict finding defendant Willie Horton guilty of murder in the first degree in violation of 18 U.S.C. § 1111 and 18 U.S.C. § 2. The court polled the jury and each juror affirmed the verdict.

The district court denied defendant's motion for a new trial, *United States v. Horton,* 716 F.Supp. 927 (E.D.Va.1989), and this appeal followed.

## II.

Horton contends that the giving of the supplemental aiding and abetting instruction was impermissible. First, he argues that the instruction should not have been given because there was no evidentiary foundation for it. Second, he maintains that the giving of the instruction was precluded by the government's tactical decision not to advance a theory of aiding and abetting but instead to argue that Horton was the principal.

Two basic principles that underlie the federal law of aiding and abetting will guide our discussion. First, by statute, "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2 (1969 & Supp.1990). Second, "[i]n order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'" *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949) (quoting *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938)). Simply put, "[a]iding and abetting means to assist the perpetrator of the crime." *United States v. Williams,* 341 U.S. 58, 64, 71 S.Ct. 595, 598, 95 L.Ed. 747 (1951).

### A.

No instruction may be given unless there is "a foundation in the evidence" to support it. *Wells v. Murray,* 831 F.2d 468, 477 (4th Cir.1987). Appellant argues that no aiding and abetting instruction was supportable because, in his view, there was no evidence whatsoever that anyone other than appellant was a principal in the offense. He is certainly right that "inherent in the evolution of the concept of accessory is the idea that the accessory and the principal are ordinarily different persons." *United States v. Walden,* 464 F.2d 1015, 1020 (4th Cir.1972). Appellant concedes, however, that, to obtain a conviction for aiding and abetting, the government need not prove the actual identity of the principal, "provided the proof shows that the underlying crime was committed by someone." *United States v. Perry,* 643 F.2d 38, 45 (2d Cir.1981). In order to obtain a conviction, "[t]he prosecution need only prove

that the substantive offense had been committed by someone and that the defendant aided and abetted him." *United States v. Campa*, 679 F.2d 1006, 1013 (1st Cir.1982); *cf. United States v. Meinster*, 619 F.2d 1041 (4th Cir.1980).

Here the identity of the actual principal is not certain. The evidence tends to show that Horton, DaCoster, and Green participated jointly in the murder, but the exact role of each is unclear, and there is no direct evidence of who delivered the fatal blow. The only eyewitness, Steve Lofton, saw Horton stab Hoston in the stomach and several times in the back, but he did not see the beginning of the fight or who delivered the stab wound to the heart. Lofton's testimony thus does not rule out the possibility that Green or DaCoster was the principal. The jury may have harbored doubts on this score: the presence of three shanks—any one of which could have been used to make any of the stab wounds—and the large number of stab wounds on the body tend to point to more than one assailant. One officer testified in fact that he saw someone who appeared to be DaCoster "tussling" in the shower.

Though the identity of the principal may be uncertain, there was ample evidence that a murder was committed in the course of a group assault. The evidence of concerted action included testimony that DaCoster, Green and Horton lingered on the tier together, went down to the shower together and came out together. One officer testified that they were friends. Lofton's testimony alone provides sufficient evidence that Horton substantially aided and abetted either DaCoster or Green or both in the murder—if he did not deliver the fatal blow himself. The cases appellant cites are all inapposite because they involve aiding and abetting instructions where there was insufficient evidence that anyone other than the defendant was involved in the crime alleged. *See Morgan v. United States*, 159 F.2d 85 (10th Cir.1947); *Payton v. United States*, 305 A.2d 512 (D.C.App.1973).

This case is thus a classic one for an aiding and abetting instruction—the commission of a criminal offense is not in doubt, but the identity of the principal may be unclear, and the defendant's participation in the venture can be established by the evidence. The very purpose of 18 U.S.C. § 2 is to render equally culpable all who participate in an offense. Here there was evidence from which a jury could have convicted Horton as an aider and abettor, and an instruction to that effect was therefore proper.

B.

Appellant argues, however, that the aiding and abetting instruction should not have been given because the government's theory of the case had always been that Horton was the principal. In Horton's view, the government's tactical decision to try the case in this manner prevented it from requesting an aiding and abetting instruction, even if there was sufficient evidence to support it. While appellant correctly states that when a party chooses not to advance a particular theory, it is not *entitled* to an instruction on that theory even if there is evidentiary support for the theory in the record, the court is not *precluded* from giving any instruction for which there is evidentiary support. The fact that a party did not pursue a particular theory does not preclude the trial judge from giving an instruction on that theory where it deems such an instruction to be appropriate.

Appellant's reliance on *United States v. Williams*, 604 F.2d 277 (4th Cir.1979), is misplaced. In that case, the defendant argued that his conviction had to be reversed because the district court had failed to give a particular instruction. This court held that the particular instruction was not required because it addressed a theory of defense that the defendant did not raise at trial and was contrary to the evidence that the defendant did present. The critical point in *Williams* was the latter; the fact that the defendant's evidence negated the requested charge. Here, the government's evidence supported the aiding and abetting charge by underscoring the point of Horton's active participation in the crime.

Moreover, *Williams* acknowledged the superior vantage point of the trial court with regard to the evidence and evaluated with the proper deference a challenge to an instruction withheld. In this case, we exercise the same deference with regard to an instruction given.

III.

Appellant tenders one further objection to an aiding and abetting instruction, namely that it deprived him of his right to a unanimous jury verdict under the Sixth Amendment. *See Andres v. United States,* 333 U.S. 740, 748, 68 S.Ct. 880, 884, 92 L.Ed. 1055 (1948) ("Unanimity in jury verdicts is required where the Sixth and Seventh Amendments apply."). Specifically, appellant contends that it is impossible to tell whether individual jurors convicted him as a principal or as an aider and abettor.

We do not believe defendant's right to a unanimous verdict was violated. On the facts of this case, there can be no doubt that all of the jurors found that Horton was an active participant in the murder of Hoston, a finding sufficient to support a verdict of first degree murder under 18 U.S.C. § 1111 and 18 U.S.C. § 2.[1] Only one act—the stabbing murder of Hoston—was charged. Only evidence pertaining to this one act was presented. To convict Horton, the jury had to find that defendant was at the scene, actively participating in the crime of murder with the necessary mens rea. Whether some jurors found Horton guilty as a principal, believing that he delivered the fatal blow to the heart, while other jurors found him guilty as an aider and abettor, doubting exactly who delivered the fatal blow, is not controlling.

Our holding accords with that of the Eighth Circuit in *United States v. Eagle Elk,* 820 F.2d 959 (8th Cir.1987), where defendant was held not to have been denied his right to a unanimous verdict where the jury was instructed on first degree murder under 18 U.S.C. § 1111 and then on aiding and abetting under 18 U.S.C. § 2. The relevance of the Eighth Circuit's rationale to Horton's case is inescapable: "[e]ven if the jury was divided on whether Eagle Elk committed the principal crime or aided and abetted in its commission, there can be no question that the illegal act was murder.... Thus the jurors were in substantial agreement as to the nature of Eagle Elk's guilty act, as required by the sixth amendment." *Eagle Elk,* 820 F.2d at 961. *See also United States v. Peterson,* 768 F.2d 64, 67 (2d Cir.1985) (principal and aiding and abetting instructions proper because "[t]he jury would still have been unanimous in finding that the acts proved to have been committed by [defendant] were sufficient to make him guilty as a principal under 18 U.S.C. § 2(a).").

Appellant commends to us a myriad of cases that state the unexceptionable proposition that "jurors [must] be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged." *United States v. Gipson,* 553 F.2d 453, 457–58 (5th Cir.1977). *See also United States v. Echeverri,* 854 F.2d 638, 643 (3d Cir.1988); *United States v. Hernandez-Escarsega,* 886 F.2d 1560, 1572 (9th Cir.1989); *United States v. Duncan,* 850 F.2d 1104, 1110 (6th Cir.1988). When alternative acts are so closely related, however, so as not to be conceptually distinct, "a jury need not be unanimous as to which factual predicate or specification supports the defendant's guilt." *Duncan,* 850 F.2d at 1111; *see also Gipson,* 553 F.2d at 458; Annotation, *Requirement of Jury Unanimity as to Mode of Committing Crime Under Statute Setting Forth the Various Modes by Which Offense May Be Committed,* 75 A.L.R. 4th 91 (1990). In this case, the alternative acts that support the two theories are fatal and non-fatal stabbing,

1. In this case, the district court gave a general instruction that the verdict must be unanimous but did not specifically instruct the jurors that they must be unanimous as to whether Horton was guilty as a principal or as an aider and abettor. We need not decide whether charging a jury under separate theories of being a principal and of aiding and abetting without a specific unanimity instruction can ever abridge a defendant's Sixth Amendment right to a unanimous verdict because in this case, the general unanimity instruction was sufficient.

and they are not "conceptually distinct." The danger of jury confusion here was minimal, *see Echeverri*, 854 F.2d at 643; the prosecution did not charge multiple crimes or argue multiple victims and incidents, *see United States v. Payseno*, 782 F.2d 832 (9th Cir.1986); and a reviewing court can conclude with confidence that the verdict represented the unanimous view of the jurors that Horton's role in Hoston's murder was, at a minimum, that of an active and knowing participant.[2]

The jury found Horton guilty of one crime—first degree murder. The fact that the jurors may have taken different routes to this conclusion provides no grounds to reverse. Rarely, in fact, will the rationales of jurors be identical in a case of this sort. If this verdict were held non-unanimous, then the government would seldom be able to convict the perpetrators of group violence of primary criminal conduct short of proving each individual's precise role in the crime. The division of roles may be murky, even where the active participation of group members is clear. By rendering aiders and abettors guilty as principals, 18 U.S.C. § 2 intended to make unnecessary a showing of the defendant's act at the level of particularity that Horton urges.

IV.

We are thus persuaded that the aiding and abetting instruction was proper and we regard the verdict in this case as a unanimous one. Appellant further contends, however, that he was prejudiced by his counsel's inability to argue his innocence fully on the supplemental aiding and abetting instruction. Though we agree that the better course would have been for the trial judge to give additional argument, we find no prejudice on the facts of this case.

Initially, we have no quarrel with the fact that the instruction was a supplemental one. It is well established that the necessity, extent and character of any supplemental instructions to the jury are matters within the sound discretion of the district court. *United States v. Franco*, 874 F.2d 1136, 1143 (7th Cir.1989); *United States v. Walther*, 867 F.2d 1334, 1341 (11th Cir.1989); *United States v. Duvall*, 846 F.2d 966, 977 (5th Cir.1988). In fact, the trial court has a duty "[w]hen a jury makes explicit its difficulties" to "clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946). Significantly, in this case, the supplemental aiding and abetting instruction was given in response to four questions from the jury pertaining to the level of involvement necessary for a conviction for first degree murder. The number and content of the questions reveal substantial confusion. The court's decision to instruct the jury on aiding and abetting was the necessary and proper response, particularly since the district court "obtain[ed] the views of counsel before giving [the] supplementary instruction," "require[d] communications from the jury to be in writing or made in open court," and "preserve[d] [the] written questions as part of the record," as we have instructed. *United States v. Polowichak*, 783 F.2d 410, 413 (4th Cir.1986).

Though the giving of the supplemental instruction was proper, its effect on the trial must be examined carefully because a defendant must have an adequate opportunity to argue his innocence under the district court's instructions in order to

2. We do not adopt the view that there is no abridgement of the right to a unanimous verdict even when the theories of guilt are substantially different. Finding no violation of the defendant's right where the jury was instructed that the charged crime of first degree murder could be committed in one of two different ways—by premeditation or by the commission of a felony—the Arizona Supreme Court explained: "[a]lthough a defendant is entitled to a unanimous jury verdict on whether the criminal act charged has been committed, the defendant is not entitled to a unanimous verdict on the precise manner in which the act was committed." *State v. Schad*, 163 Ariz. 411, 417, 788 P.2d 1162, 1168 (1989), *cert. granted*, — U.S. —, 111 S.Ct. 243, 112 L.Ed.2d 202 (1990). We need not go so far. In the Arizona case, the necessary mens rea for a finding of guilt under the theories are substantially different. In this case, the factual predicates are intertwined and the specific intent to commit first-degree murder must be found to convict the defendant as a principal or as an aider and abettor.

be assured a fair trial. The purpose of Federal Rule of Criminal Procedure 30—which provides that the "court shall inform counsel of its proposed action upon the requests [for particular jury instructions] prior to their arguments to the jury"—is "to require the district court to inform the trial lawyers in a fair way what the instructions are going to be in order to allow counsel the opportunity to argue the case intelligently to the jury". *United States v. Gaskins*, 849 F.2d 454, 458 (9th Cir.1988). *See* Annotation, *Court's Duty to Inform Counsel of Proposed Action on Requested Instructions under Rule 30 of Federal Rules of Criminal Procedure*, 40 A.L.R. Fed. 495 (1978).

We cannot accept the government's view that there can be no prejudice solely because no Rule 30 violation occurred in this case. Just as a technical violation of Rule 30 requires reversal only when the defendant can show actual prejudice, *United States v. Burgess*, 691 F.2d 1146, 1156 (4th Cir.1982), a technical satisfaction of Rule 30 cannot prevent reversal where actual prejudice is clear. Thus, the government's contention that the district court literally complied with Rule 30 by informing counsel of its intent to give the supplemental instruction prior to the supplemental arguments matters little. In addition, the fact that the defendant may have been earlier on notice that the theory of aiding and abetting was potentially relevant to this case would not prevent our finding a violation of Rule 30. Only notice that a particular instruction would be given and an adequate time to argue on that instruction could satisfy the purposes of Rule 30.

To be sure, Rule 30 is not implicated every time a trial judge comments in response to a jury inquiry or clarifies a previous instruction. But where a new theory is presented to the jury in a supplemental instruction after closing argument, the court generally should give counsel time for additional argument. *See United States v. Civelli*, 883 F.2d 191, 196 (2d Cir.1989) (in special cases, principles underlying Rule 30 may require additional argument); *Loveless v. United States*, 260 F.2d 487, 488 (D.C.Cir.1958); *Downie v. Powers*, 193 F.2d 760, 767 (10th Cir.1951). Adequate additional argument can cure any prejudice experienced as a result of supplemental instructions. While limitations on the scope or extent of argument are plainly within the discretion of the trial judge, *United States v. Carter*, 760 F.2d 1568, 1581 (11th Cir.1985), an abuse of discretion may be found when the contested limitations on argument "prevent[] defense counsel from making a point essential to the defense." *United States v. Sawyer*, 443 F.2d 712, 713 (D.C.Cir.1971). Here, the supplemental charge provoked by the jury's inquiries was obviously the focus of its deliberations. The better exercise of discretion would have been to provide additional argument.

Though three minutes would have been utterly inadequate to develop an additional argument made necessary under a supplemental instruction, we are unable to discern either from defendant's actual supplemental argument or from his brief what new line of argument to the jury he really wished to pursue. A violation of Rule 30 requires reversal only when the defendant can show actual prejudice, *Burgess*, 691 F.2d at 1156, and we can find no prejudice here. The government contends that all points essential to the defendant's case were made in the initial closing argument and that advance notice of the aiding and abetting instruction would not have altered the tenor or substance of defendant's initial closing.

We agree. In this case, the factual predicates of Horton as principal and of Horton as aider and abettor are so similar that the arguments to be made against guilt are essentially the same under both theories. Under either theory, the main argument must be that Lofton—the sole eyewitness—was incredible. In his initial closing, defense counsel attacked Lofton's credibility by emphasizing his drug use and prior convictions and by highlighting the inconsistencies between his trial testimony and his prior statements to the grand jury and co-defendant's counsel. The defense

also intimated that Lofton might be lying to protect Green, whom Lofton had known from his old neighborhood, or to prevent Green or DaCoster from pointing the finger at him. In addition, the defense pointed out that Lofton, though he needed glasses, was not wearing them that night. These arguments would have been the same, whether one or both theories had been charged.

In addition, under either theory, the defense would argue that Horton did not stab Hoston, in the heart or elsewhere. This is in substance what the defense did in its initial closing argument. The defense argued that, without Lofton's testimony, there was no evidence proving that Horton participated in Hoston's murder or that he even had a shank. Defense counsel highlighted the weaknesses in the other evidence, for example, pointing out the inconsistencies in the testimony of the guards.

Defense counsel would also argue under either theory that someone other than Horton committed the murder and that, even if Horton was in the shower at the time of the assault, mere presence is not enough to support a conviction. In fact, defense counsel did so argue in his initial closing. Specifically, the defense pointed out that one of the officers saw a person that looked like DaCoster tussling in the shower. In addition, the defense insinuated that someone from the lower tier could have reached through the bars of the lower gate to stab Hoston or that Lofton himself might have been involved.

Under either theory of being a principal or an aider and abettor, the defense would argue that defendant did not possess the necessary mens rea for first degree murder. Defense counsel argued that Horton had no motive and that there was no evidence of premeditation. The defense noted that, even if Lofton's testimony were believed, there was no evidence of how the fight started and, therefore, Horton might have stabbed Hoston in self-defense or when provoked.

Finally, under either theory, defense counsel would argue against the inferences that the government urged the jury to make based upon the allegedly false exculpatory statement Horton made to the FBI, upon Horton's alleged flight from the scene of the crime and upon the threats Horton allegedly made to Lofton. Defense counsel made exactly these arguments in his initial closing.

Thus, the defense counsel made all the arguments essential to his case—under either an aiding and abetting theory or a principal theory—in his initial closing. Nothing in the three minutes of additional argument suggests that defense counsel had any additional arguments to make.

None of the arguments defense counsel now advances are essential to his case. He contends that, given more time, he would have argued that the single eyewitness, Lofton, was clear in his testimony that only one person committed the murder; that there was no aider and abettor. This seems at best an awkward argument for the defense to make since the one person Lofton insists committed the murder was Horton himself.

In addition, the defense maintains it could have argued more fully that Horton lacked the requisite mens rea for first degree murder and that his mere presence at the scene of the crime did not prove his guilt. Though one can always argue longer and more fully, these arguments were sufficiently developed in the initial closing.

The defense contends that it could have argued that any assertion of an aiding and abetting theory by the government would reveal a lack of faith in its key witness. Such an argument is hardly essential to the defendant's case, particularly since the government never equivocated on the fact that it believed Horton to be the principal.

Finally, the defense contends that it could have attacked the government's assertions of concerted action and the evidence advanced in support of it. However, in the initial closing, the defense highlighted the inconsistencies in the testimony as to the movements and locations of the inmates, in particular pointing out that the evidence was unclear as to whether Green, DaCoster, and Horton left the shower together.

Though we believe that the district court erred in allowing only three minutes of additional argument on the supplementary aiding and abetting instruction, we find no prejudice on the specific facts of this case. The essential question remained what it always had been and what Horton had ample time to argue to the jury—whether Lofton was a credible witness and whether Horton was an active participant in the murder that took place.

V.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.