64 F.3d 659
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Brenda Page ALDEN, Defendant-Appellant.
 No. 94-5790.
 United States Court of Appeals, Fourth Circuit.
 Argued July 14, 1995.
Decided Aug. 23, 1995.
 
 ARGUED: Mary Elizabeth Manton, Federal Public Defender, Raleigh, NC, for Appellant. Scott Patrick Mebane, Assistant United States Attorney, Greensboro, NC, for Appellee. ON BRIEF: Walter C. Holton, Jr., United States Attorney, Greensboro, NC, for Appellee.
 Before ERVIN, Chief Judge, and BUTZNER and PHILLIPS, Senior Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Defendant, Brenda Alden, was found guilty of eight counts of mail fraud under 18 U.S.C. Sec. 1341. On appeal, Alden raises three issues. First, she argues that she was prejudiced by the trial court's failure to give defense counsel time for additional closing argument after the court issued a supplemental jury instruction. Second, she argues that the government wrongly used information tendered during plea negotiations during the trial. Finally, she asserts that the district court abused its discretion by allowing a loan agreement between Alden Metals, Inc. and Liberty Finance Corporation into evidence. Finding no error, we affirm.
 
 I.
 
 2
 Alden Metals was in the business of fabricating and supplying steel for construction projects. David Alden was the company's president. His wife, Brenda Alden, was the chief financial officer and responsible for accounting, bookkeeping, and banking relationships of the corporation.
 
 
 3
 On May 18, 1989, Alden Metals entered into a factoring loan agreement with Liberty Finance. Under this agreement, Liberty Finance extended loans to Alden Metals using Alden Metals' accounts receivable as collateral. Alden Metals would fax a copy of a customer's invoice for work that had already been completed to Liberty Finance, accompanied by a request that the invoice be factored. A mailing containing a copy of the invoice would generally be sent the next day. A few days later, Liberty Finance would advance eighty percent of the invoice amount to Alden Metals. Once a customer paid Liberty Finance in full for an invoice, Liberty Finance would release the remaining twenty percent to Alden Metals, less a fee of 1.25 percent of the amount of the invoice and interest at the prime rate plus two percent.
 
 
 4
 As Alden Metals' cash flow became tighter, the Aldens discussed the idea of obtaining credit in advance from Liberty Finance by prebilling invoices to Liberty. Essentially, Alden Metals would send invoices to Liberty Finance before the work was completed on the invoiced project and before the invoices were submitted to the general contractor for payment. The company also began to send invoices for non-existent projects to Liberty Finance. On a weekly basis, Carrie Wilson, a bookkeeper for Alden Metals who reported to Brenda, would forecast the amount of money that the company would need for the following week and report that amount on Friday to Brenda. Brenda would, in turn, discuss the company's cash flow needs with her husband and decide which projects to factor.
 
 
 5
 In order to keep track of these pre-billed invoices, Brenda would write "UFF" on the portion of the pre-billed invoices that were not sent to Liberty Finance. UFF was a phrase that she coined, meaning "up-front factoring." The defendant and Carrie Wilson also sought the services of a computer programmer to design a software program to differentiate between valid jobs and false, non-existent jobs. They also kept separate ledgers.
 
 
 6
 Near the end of the scheme, Liberty Finance requested information on slow-paying accounts. In response, the defendant created a list known as the "hot A/R" or hot account receivables list. This list summarized the status of all accounts and contained reasons why the accounts were being paid slowly. On a weekly basis, Liberty Finance would discuss this list with Brenda. In June 1992, Liberty Finance became aware of the scheme and the Secret Service began an investigation, which led to the issuance of a thirteen-count mail fraud indictment against David and Brenda Alden in December of 1993.
 
 
 7
 The particular counts in this indictment were based upon false and fraudulent invoices that were submitted to Liberty Finance for nonexistent contracts between Alden Metals and its customers. In February 1994, Brenda and David gave separate on-the-record statements to the government in the presence of counsel. They were both informed that their statements could be used against them. On February 25, 1994, David pled guilty to the indictment under the terms of a plea agreement. On March 1, 1994, Brenda's counsel submitted a written proffer to the government in which Brenda discussed her role in seven of the thirteen counts. After plea negotiations with Brenda failed, the government obtained a superseding indictment on March 28, 1994, that dismissed eight of the original counts and added five new ones. The new counts were not mentioned in the written proffer. The additional counts involved Alden Metals' contracts with its customers that may have existed, though no valid accounts receivable were outstanding when the invoices were submitted for factoring to Liberty Finance.
 
 
 8
 Brenda Alden's trial began on May 23, 1994. Prior to the lunch recess on the first day, the government announced that it would call as its next witness Bill Smith from Liberty Finance. At that point, defense counsel indicated to the court that he had not received a copy of the seven-page factoring agreement between Liberty Finance and Alden Metals. The government's attorney responded that he had assumed that the defendant had a copy of the agreement, because relevant portions of the document were referred to in her pretrial brief. The court ordered the government to provide defense counsel with a copy of the factoring agreement and recessed for the day to allow counsel to review the document. The trial resumed the following day. However, the witness who was to testify about the document, Bill Smith, did not testify until two days later, as the government's last witness.
 
 
 9
 Jury deliberations began on May 26, after a three-day trial. In the afternoon, the jury requested that the elements of mail fraud be explained again. The court gave a supplemental instruction on aiding and abetting. Neither counsel requested, nor did the court offer, additional time for argument after the supplemental instruction was issued. The jury was dismissed for the evening and returned verdicts of guilty the next morning. Alden was sentenced to forty-one months. This timely appeal followed.
 
 II.
 A.
 
 10
 Alden argues that she should have been allowed to present additional closing argument after the court issued a supplemental jury instruction on aiding and abetting. We begin by noting that the necessity, extent, and character of supplemental jury instructions, as well as the scope and extent of argument, are matters within the trial court's discretion. United States v. Horton, 921 F.2d 540, 546, 547 (4th Cir.1990), cert. denied, 501 U.S. 1234 (1991). Under Rule 30 of the Federal Rules of Criminal Procedure, we have indicated that a court generally should give counsel time for additional argument after a supplemental instruction. Id. at 547. Failure to allow additional time requires reversal, however, only if the defendant can show actual prejudice. Id.
 
 
 11
 During deliberations, the jury asked for a "clear explanation" of the following paragraph:
 
 
 12
 The defendant can be found guilty of that offense only if all the following facts are proved beyond a reasonable doubt. First, that the defendant knowingly and willfully devised a scheme to defraud or for obtaining money or property by means of false pretenses, representations or promises; and second, that the defendant used the United States postal service by mailing or causing to be mailed some matter or thing for the purpose of executing the scheme to defraud.
 
 
 13
 In response to the jury's request, the judge issued a supplemental instruction to be "read and ... applied along with all the other instructions already given." The court stressed that the supplemental instruction should not be "take[n] out of context." The supplemental instruction stated:
 
 
 14
 The guilt of a defendant in a criminal case may be proved without evidence that he or she personally did every act involved in the commission of the crime charged. The law recognizes that ordinarily anything a person can do for himself or herself may also be accomplished through direction of another person as an agent or by acting together with or under the direction of another person or persons in a joint effort. So if the acts or conduct of an agent, employee or other associate of the defendant are willfully directed or authorized by the defendant, or if the defendant aids and abets another person by willfully joining together with that person in the commission of a crime, then the law holds the defendant responsible for the conduct of that other person just as though the defendant had engaged in such conduct himself or herself.
 
 
 15
 Notice, however, that before any defendant can be held criminally responsible for the conduct of others, it is necessary that the defendant willfully associate herself in some way with the crime and willfully participate in it. Mere presence at the scene of a crime and even knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime. You must find beyond a reasonable doubt that the defendant was a willful participant and not merely a knowing spectator.
 
 
 16
 After hearing the instruction, the jury returned to its deliberations. The court asked that the record reflect that counsel met with the court in chambers to discuss the jury's question and the supplemental instruction. Defense counsel objected to the instruction on the grounds that "the instruction ... is not necessary for the question that was asked. The elements that were requested by the jury for clarification somewhat speak for themselves." In response, the court noted that counsel did not provide an alternate instruction.
 
 
 17
 Where a supplemental instruction represents a new theory of the case, the court should allow counsel to make additional closing arguments to avoid prejudice. Horton, 921 F.2d at 544; see also, United States v. Gaskins, 849 F.2d 454, 459-460 (9th Cir.1988) ("arguments based on convicting a defendant as a principal or convicting a defendant as an aider and abettor are based on two conceptually different theories"). If counsel's initial closing argument implicitly or explicitly addressed the issue in the supplemental instruction, however, we have held that there is no prejudice. Horton, 921 F.2d at 544.
 
 
 18
 The principles of Horton have been adopted and applied by the Second and Ninth Circuits in United States v. Fontenot, 14 F.3d 1364, 1368-69 (9th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 431 (1994), and United States v. James, 998 F.2d 74 (2d Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 415 (1993). In James, the Second Circuit, noting that the defendant did not request additional argument after the supplemental instruction, stated: "Having failed to request additional argument and having thereby deprived Judge Sprizzo of the opportunity to correct any potential error, [the defendant's] argument on appeal [that] he was never given the chance to reargue is without merit and certainly does not constitute plain error." Id. at 79. Additionally, citing Horton, the court emphasized that the defendant did not argue that his closing argument would have been different had he been afforded additional time, and thus was not prejudiced. Id. Similarly, the Ninth Circuit cited Horton in support of the proposition that "if a supplemental jury instruction given in response to a jury's question introduces a new theory to the case, the parties should be given an opportunity to argue the new theory." United States v. Fontenot, 14 F.3d at 1368. The court, however, noted that counsel made no request to reopen argument, and as such there was "no ruling to review." Id.
 
 
 19
 We, likewise, have not been presented with a ruling to review. In Horton, however, while recognizing the discretion given to the trial court, we nonetheless stated that the "better exercise" of the trial court's discretion would have been to allow time for additional argument. Horton, 921 F.2d at 547. In fact, we found that the trial court erred in allowing only three minutes of additional argument on the supplemental instruction. Id. at 548. Nevertheless, we found no prejudice because defense counsel had made all of the essential arguments, under either an aiding and abetting theory or a principal theory, in his initial closing. Id. at 548-49; but see Gaskins, 849 F.2d at 457 (reversing a conviction because district court's refusal to reopen closing argument on defense counsel's request after issuing a supplemental instruction on aiding and abetting prejudiced defendant, because counsel's closing argument did not contain information relevant to an aiding and abetting theory).
 
 
 20
 Like the defendant in Horton, Alden has failed to demonstrate actual prejudice. Specifically, she has failed to show that her argument would have been different had she been allotted time for additional argument. In his closing argument, Alden's counsel argued that Alden did not have the specific intent to commit mail fraud and that she had been forced into submitting false invoices because she had trusted her husband and had followed his instructions. The same strategy would apply whether Alden was facing conviction as an aider and abettor or as a principal. As in Horton, the "factual predicates of [defendant] as principal and of [defendant] as aider and abettor are so similar that the argument to be made against guilt are essentially the same under both theories." Horton, 921 F.2d at 547.
 
 
 21
 We, therefore, find that although the court should have given counsel time for additional argument, Alden was not prejudiced by the absence of argument, since she has failed to show that her argument would have changed because of the supplemental instruction. In light of counsel's failure to request such argument, and in the absence of any prejudice, we hold that the district court did not abuse its discretion.
 
 B.
 
 22
 Alden also challenges the accuracy of the supplemental instruction. Defendant argues that the supplemental instruction did not emphasize the specific intent language required under 18 U.S.C. Sec. 1341 for mail fraud. On appeal, Alden argues that the instruction diminished the government's burden of proof and permitted a conviction upon a finding of mere participation by the defendant in her husband's scheme.
 
 
 23
 We begin by recognizing the discretion given to the trial court in determining the character of supplemental instructions. Horton, 921 F.2d at 546. We also note that Alden had the opportunity to offer a supplemental instruction but did not do so. Nor did she object to the content of the instruction, objecting instead merely to the court's decision to give an instruction. Furthermore, contrary to Alden's argument, the supplemental instruction required the jury to find that "defendant willfully associate[d] herself in some way with the crime and willfully participate[d] in it." The instruction also stated that mere presence and knowledge were insufficient to sustain a conviction. The instruction emphasized that the jury must find "beyond a reasonable doubt that the defendant was a willful participant and not merely a knowing spectator." The trial court also instructed the jury to consider the supplemental instruction in context of the prior instructions. Finally, we note that the instruction given closely resembles the aiding and abetting instruction approved of in United States v. Weil, 561 F.2d 1109, 1112 (4th Cir.1977), and Gaskins, 849 F.2d at 454. We, therefore, find that the trial court did not abuse its discretion and that the instruction was not erroneous or prejudicial. See United States v. United Medical and Surgical Supply Corp., 989 F.2d 1390, 1407 (4th Cir.1993) (finding district court did not abuse its discretion in wording of supplemental jury instruction since instruction "was not misleading, fairly answered the jury question without creating prejudice, and gave an accurate description of the law on the subject").
 
 III.
 
 24
 Alden also argues that the government wrongly used information at trial that it had obtained during plea bargaining. Alden was charged on December 20, 1993, with thirteen counts of mail fraud. On February 22, 1994, Alden and her attorney met with the Assistant United States Attorney and a United States Secret Service Agent to negotiate a plea. According to the government, Alden was informed that the interview would be on the record and that any statement she might make could be used against her. Defendant submitted a written proffer on March 1, 1994. The plea negotiations broke down, and on March 28, 1994, a superseding ten-count indictment was filed. It contained five original counts and five new ones.
 
 
 25
 Defendant alleges that the five new counts were based upon information that the government received as a result of the February 22 meeting. Defense counsel admits that he did not move to quash the indictment nor did he move to vacate the superseding indictment on the basis of improper reliance upon the proffer. Because this issue was not raised in the district court, we review only for plain error. Fed.R.Civ.P. 51; United States v. Grubb, 11 F.3d 426, 440-41 (4th Cir.1993); see United States v. Olano, --- U.S. ----, 113 S.Ct. 1770 (1993) (plain error under Rule 52(b) must both be "plain" and affect "substantial rights"). We note that counsel does not point specifically to any information in the record to verify his position that the government used information it obtained during the February 22 meeting and to which it had no other access. We also note that the written proffer did not mention any of the invoices contained in the five additional counts in the superseding indictment. We, therefore, find that the defendant has failed to demonstrate plain error.
 
 IV.
 
 26
 Finally, Alden argues that the trial court erred in admitting into evidence the factoring agreement between Liberty Finance and Alden Construction, because the government did not provide the agreement to defense counsel until after trial had begun. We review admissibility of evidence for abuse of discretion. United States v. Whittington, 26 F.3d 456, 466 (4th Cir.1994).
 
 
 27
 At noon of the first day of trial, Alden's counsel informed the court that he did not have a copy of the seven-page factoring agreement. The government stated that it had not planned to introduce the document into evidence during its case-in-chief and had assumed that defense counsel had a copy of the document, since Alden's pretrial brief contained references to the factoring agreement. Nevertheless, the district court halted trial in order to allow Alden's attorney time to look over a document that defense counsel admitted was "straightforward." The document was not introduced into evidence until two days later, on the last day of the government's case.
 
 
 28
 The document was one that defendant knew well and was able to review before cross-examination of the Liberty Finance employee. We, therefore, conclude that the district court did not abuse its discretion by admitting the document into evidence.
 
 V.
 
 29
 For the reasons set forth above, the convictions of Brenda Alden are
 
 
 30
 AFFIRMED.