**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

ROBERT JAMES TURNER, a/k/a Robert
James Branham,
Defendant-Appellant.

No. 97-4104

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-96-374)

Submitted: January 30, 1998

Decided: February 20, 1998

Before HALL and MICHAEL, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Alan H. Yamamoto, Alexandria, Virginia, for Appellant. Helen F.
Fahey, United States Attorney, LeDora Knight, Assistant United
States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Robert James Turner, a/k/a Robert James Branham, was convicted of first degree murder under 18 U.S.C. § 1111 (1994) and possession of contraband by a prisoner in violation of 18 U.S.C. § 13 (1994), assimilating Va. Code Ann. § 53.1-203(4) (Michie 1994). On appeal, Turner contends that the court abused its discretion by rereading instructions to the jury regarding premeditation, and refusing to reread the entire instructions for first degree and second degree murder. We affirm the conviction.

In February 1995, while incarcerated by the District of Columbia's Department of Corrections, Turner killed inmate Joseph Daniels by stabbing him to death with a shank. The record discloses that Turner and Daniels argued on the morning of the incident. Upon the insistence of a fellow inmate, the two men later shook hands and hugged in an effort to resolve the situation. According to the testimony of other inmates, shortly thereafter Turner, appearing preoccupied, stated that he was going to fight Daniels. Once again, another inmate attempted to dissuade Turner from fighting with Daniels.

Later that day, inmate Timothy Lytch was awakened by fighting in the bunk below. Turner, who appeared to be the aggressor, continued to beat Daniels, who slept in the bunk below Lytch, until another inmate finally separated the two. Within one half hour after Turner left, Turner once again approached Daniels and other inmates. Turner directed an inmate who asked what was going on to get out of the way and swung at him with something in his hand. After the inmate complied, Turner proceeded to swing at Daniels until Daniels fell. Turner rebuffed all attempts by other inmates to calm him down and persuade him to stop. Turner then proceeded towards Daniels with a shank. Daniels, unarmed, fell onto a bed. Turner continued to swing his shank at Daniels striking Daniels, as Daniels tried to get away.

2

Daniels collapsed in the hallway. Turner changed his blood-stained clothes and hid these clothes in a footlocker.

Turner was tried by a jury on single counts of murder and prisoner possession of a shank. After presentation of the evidence, the judge charged the jury, in relevant part, with the following instructions:

> You are not to single out any one instruction alone as stating the law. You are going to find the law, if you haven't already, it's complex; and there are a lot of issues and considerations in this case. There are a whole bunch of different legal principles or legal instructions that you have to keep in mind as you do your deliberations.

(J.A. at 450-51).

> . . . [E]very offense has what we call elements. Elements are requirements. Every crime has a different number of elements, and you must remember that the burden in a criminal case is on the Government. In order for the Government to prove the guilt of a defendant for a particular crime, the Government's evidence must establish beyond a reasonable doubt every one of the elements.

(J.A. at 464).

> Now, there are five elements for the crime of murder in the first degree.

(J. A. at 465).

> . . . [A]n act is done with premeditation if it is done upon deliberation. In order to satisfy this element, the Government must prove beyond a reasonable doubt that the defendant killed Joseph Daniels only after thinking the matter over, deliberating whether to act before committing the crime.
>
> There is no requirement that the Government prove that the defendant deliberated for any particular period of time in order to show premeditation.

3

It is sufficient to satisfy this element if you find that, before the defendant acted, the defendant had a period of time to become fully aware of what he intended to do and to think it over before he acted.

In considering whether the element of premeditation is satisfied, you may consider all the facts surrounding the crime, as you find them, including any motive for the crime, any evidence of planning or preconceived scheme or any evidence of the procurement of instruments or weapons to commit the crime.

(J.A. at 467-68).

. . . [M]urder two or murder in the second degree is minus one of those elements. It has the first four elements, but the element of premeditation is missing from murder two.

(J.A. at 469).

During deliberations, the jury sent the court the following note for clarification:

For first-degree murder, does the premeditation element need only one element? . . . Motive or evidence for planning or procurement of a weapon are all elements, or are these just examples? We would like a specific definition of premeditation.

(J.A. at 487). In response, the court replied:

. . . [Y]ou asked me . . . about premeditation. Now you have a copy of the transcript of what I told you before, so you have the full set of instructions, and the Court has to be very careful not to overly focus or highlight one instruction over the others.

As I told you, you have to think about the charge as a whole, and everything is interrelated; but there are a couple of

4

things in your question to me that indicate that you may be a little unclear on some things. So, I'm going to clarify that for you.

You talk about, [d]oes the premeditation element need only one element? Well, we don't talk about the element having elements. In other words, premeditation is an element.

Your real question is, [w]hat is premeditation? Premeditation, the word means pre, which means before; meditate, to think. It means thinking before, all right. That's the literal term, to think before. I read you the instruction. I'm going to go over it with you again.

An act is done with premeditation if it is done upon deliberation. That means that there has been some thinking before the act is done.

In order to satisfy this element, the Government must prove beyond a reasonable doubt that the defendant killed Joseph Daniels only after thinking the matter over. In other words, deliberating or thinking about whether to act before actually committing the crime. All right, that's what premeditation means, as opposed to just doing something instantaneously without having thought about it.

. . . . [Y]ou can find--premeditation doesn't have a specific time period. The law doesn't say, for example, there must have been a 20-minute period of thinking in order to find premeditation. There's nothing like that, no magic time period for premeditation, but the Government has the burden of proving that there was, in fact, thinking about the matter before the act was committed, all right. . . . In considering whether the element of premeditation is satisfied, you, the jury, may consider all the facts and circumstances surrounding the crime, as you find those facts to be, including any motive for the crime, any evidence of planning or preconceived scheme and any evidence concerning the procurement of instruments or weapons to commit the crime.[S]o what this instruction has given you . . . are factors that may

5

be considered by the jury; and there may be other factors. You are to look at all the facts and circumstances of the case. Now, I want to remind you that premeditation is an element only in the murder in the first degree. If you do not find premeditation, then you move on to your evaluation of the lesser-included offenses, which I have already instructed you on.

(J.A. at 490-93).

The jury found Turner guilty of prisoner possession of a shank on the first day of deliberations, and of first degree murder the next day. For first degree murder, the court sentenced Turner to a life sentence to run consecutively to his current sentence, and on the last charge, sentenced Turner to 41 months to run concurrently to the murder sentence.

On appeal, Turner maintains that the court erred in rereading the premeditation instruction, adding unsolicited language, and focusing on the premeditation element without reviewing all the elements of first degree and second degree murder. The district court has discretion to decide how best to respond to an inquiry from the jury. See United States v. Horton, 921 F.2d 540, 546 (4th Cir. 1990). In fact, "the trial court has a duty `[w]hen a jury makes explicit its difficulties' to `clear them away with concrete accuracy.'" Id. (quoting Bollenbach v. United States, 326 U.S. 607, 612-13 (1946)). Furthermore, the necessity, extent and character of any supplemental instructions to the jury are matters within the sound discretion of the district court. See Horton, 921 F.2d at 546. Supplemental charges must be examined in light of previously given instructions. A supplemental charge need not contain all the elements of the offense, if the original charge accurately stated those elements. See United States v. Iredia, 866 F.2d 114, 118 (5th Cir. 1989). An error requires reversal only if it is prejudicial in the context of the record as a whole; the standard of review is whether the instructions "fairly responded to the jury's question without creating prejudice." United States v. United Medical & Surgical Supply Corp., 989 F.2d 1390, 1406-07 (4th Cir. 1993).

Here, during deliberations, the jury requested clarification from the court regarding the element of premeditation. In responding, the

6

court, noting that it did not want to place undue emphasis on any particular portion of the instructions, directed the jury to keep in mind the instructions as a whole before it proceeded. The court properly addressed the jury's questions, rereading the pertinent portions of the instructions without displaying partiality to the Government. Any supplemental instructions given by the court in responding to the jury's inquiry were appropriate and did not prejudice Turner. Under these circumstances, we hold that the court did not err in its supplemental instructions to the jury. We therefore affirm Turner's convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.

AFFIRMED