**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-4340

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOSEPH WAYNE LOFTIN, a/k/a Hippy Joe, a/k/a
Joseph Wayne Loften,

Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Durham.  N. Carlton Tilley, Jr., Chief District Judge.  (CR-03-267)

Argued:  February 4, 2005          Decided:  April 22, 2005

Before NIEMEYER and MICHAEL, Circuit Judges, and Samuel G. WILSON, United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Benjamin David Porter, MORROW, ALEXANDER, TASH, KURTZ & PORTER, P.L.L.C., Winston-Salem, North Carolina, for Appellant. Robert A. J. Lang, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Anna Mills Wagoner, United States Attorney, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Joseph Wayne Loftin was charged with stealing firearms from a federally licensed firearms dealer, in violation of 18 U.S.C. § 924(m) and § 2 (the aiding and abetting statute), and with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and § 924(e)(1). After a jury convicted Loftin on both counts, the district court sentenced him to 245 months' imprisonment for possession of a firearm as a convicted felon and 120 months' imprisonment for stealing firearms, to run concurrently. The court also ordered Loftin to pay restitution in the amount of $4,190.

On appeal, Loftin contends that the district court erred in responding to several jury questions submitted to the court during deliberations. Finding no reversible error, we affirm.

I

In March 2002, Robert Lakey, James Callahan, James Cox, and the defendant Loftin were sitting around with a group of people, drinking, and "talking about ways to make money." At some point during that meeting, Loftin said he knew of a person who had a large number of firearms in his trailer home. Accordingly, the group decided to break into the Lewisville, North Carolina home of Larry Davis, a federally-licensed collector of firearms, and steal his firearms.

-2-

After Lakey, Cox, and Loftin drove to Davis' residence in the early morning hours of March 11, 2002, to case the place, Lakey, Callahan, and Loftin returned later that morning, waited for Davis to leave, and then proceeded forcibly to enter Davis' residence. After entering the residence, the group ransacked the interior and stole 33 weapons, which the various members of the conspiracy then stored.

Later Lakey and Callahan cooperated with federal officials and testified against Loftin, stating that Loftin used a crowbar to pry open the front door, after which Loftin and Lakey entered the residence, pried open the gun safe, and removed the guns. Callahan admitted to being the driver.

During the course of jury deliberations during Loftin's trial, the jury submitted numerous questions to the court, which the court answered with further instructions to the jury. Following Loftin's conviction and sentencing, Loftin filed this appeal.

On appeal, Loftin challenges only the court's responses to jury questions.

II

During deliberations, the jury sent a handwritten question to the court as follows: "Steal equals taking. Could a person 'take' . . . 'steal' without being physically at the site of the theft, i.e. at the trailer? Or does agreement to accept the

stolen goods, hide the stolen goods constitute 'taking' and therefore 'stealing?' We need clarification on what constitutes actual theft."

Discussing a response with counsel, the court proposed giving a standard aiding and abetting instruction to help clarify to the jury whether a defendant's actual presence in the residence was necessary to convict. The court also proposed to read again an earlier instruction giving the meaning of the word "steal." Counsel for Loftin did not object to the repeat of the "steal" instruction, but stated that the aiding and abetting instruction was not necessary in view of the evidence. In counsel's view, "anything could have happened and possibly a scenario could have happened, but there is no evidence to support that. The evidence in the case is that [Loftin] was a direct participant in this, so either he did it or he didn't."

The court instructed the jury as it proposed, giving the jury a standard aiding and abetting instruction and concluding, "in order to find Mr. Loftin guilty of the charge in count one, you would have to find it has been proven beyond a reasonable doubt that he participated or aided and abetted the taking of the firearms from the trailer."

Loftin now contends that giving the aiding and abetting instruction constituted error, as it was not supported by the evidence. According to Loftin, the evidence only indicated that he

-4-

was one of the principals who actually engaged in the break-in and the theft.  In Loftin's view, if the jury did not believe that he was a principal, then it should acquit and not find him guilty on an aiding and abetting charge.

We find Loftin's view of the case too rigid.  The government proved with ample evidence that the underlying offense had been committed by at least three individuals -- Loftin, Lakey, and Callahan -- and maybe by Cox.  Moreover, there was evidence that Loftin, Lakey, Callahan, and Cox all possessed some of the firearms after the theft.  While the government's theory of the case was that Loftin and Lakey were the prime perpetrators, it is possible that cross-examination made the identity of the actual principals uncertain.  While it is clear that Loftin, Lakey, Callahan, and Cox were all involved, the jury could have harbored doubts on the exact role of each and on the extent of participation by each.

Loftin was charged with both being a principal and an aider and abettor, and, we conclude that the district court did not abuse its discretion in giving the jury an aider and abettor instruction that all parties agreed was appropriate in form.  See, e.g., United States v. Horton, 921 F.2d 540, 543-45 (4th Cir. 1990), cert. denied, 501 U.S. 1234 (1991); United States v. Duke, 409 F.2d 669, 671 (4th Cir. 1969).

III

During deliberations the jury also submitted questions such as, "Was there an opportunity for the witnesses to compare stories?" and "Did the government coach witnesses separately on testimony?" The court advised the jury, "[Y]ou must make your decision based on the evidence that has been presented in the case, and it is up to you to remember what has been presented in the case."

Loftin contends that this response is misleading because it does not allow the jury to consider the possibility that the government did coach the witnesses or that the witnesses did compare stories, even though there was no evidence in the record to support those possibilities.

Because Loftin raises this objection for the first time on appeal, we review it under the plain-error standard. See Fed. R. Crim. P. 52(b). We conclude that Loftin has failed to carry his burden under that standard. The court's instruction in response to the jury's question was an appropriate allusion to its earlier and fuller instruction to the jury:

> Now, in saying that you must consider all of the evidence, I do not mean that you must accept all of the evidence as true or accurate. You should decide whether you believe what each witness had to say and how important that testimony was. In making that decision, you may believe or disbelieve any witness, in whole or in part.

The district court's supplemental instruction relating to possible credibility issues did not conflict with the court's earlier instruction, nor did it erroneously advise the jury of its task. As such, Loftin has not fulfilled his burden of showing prejudicial error.  See United States v. United Med. Surgical Supply Corp., 989 F.2d 1390, 1406-07 (4th Cir. 1993).

AFFIRMED